Chermak v. Smolik.

---

ANTON CHERMAK, APPELLEE, V. FRANK SMOLIK, APPELLANT.

FILED APRIL 30, 1924.    No. 22761.

1. **Principal and Agent:** CONTRACT OF AGENT: RATIFICATION. Even though a written contract to sell real estate was entered

Chermak v. Smolik.

into by an agent without written authority from the owner of the land, the contract may be ratified, where the owner, with knowledge of all the facts, receives the part of the consideration paid in cash, and enters into a valid written contract to convey the land to the agent upon the same terms and maturing at the same time as the original contract so that the purchaser may acquire the title under the original contract with the agent.

2. **Vendor and Purchaser:** TENDER. Where the vendee in an executory contract for the sale of real estate renounces or abandons the contract before maturity, the vendor is relieved from the necessity of tendering performance at maturity.

APPEAL from the district court for Butler county: ED-WARD E. GOOD, JUDGE. *Reversed.*

*Hastings & Coufal* and *Thomas, Vail & Stoner*, for appellant.

*Matt Miller* and *Roper & Fuller*, contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and DAY, JJ.

LETTON, J.

This action is to recover the sum of $2,500, which the petition alleges was made as an initial payment by plaintiff to defendant upon an executory contract, dated May 16, 1918, by which defendant agreed to sell to plaintiff 160 acres of land for the purchase price of $40,800, payable $2,500 in cash, and $38,300 on or before March 1, 1919, at which time possession was to be given. Time was an essential element of the contract, and there was a provision that, if either of the parties failed to perform any of the stipulations of the contract, the failing party should pay $2,500 as damages for nonfulfillment. It is alleged that defendant failed to comply with the terms of the agreement by furnishing a warranty deed or an abstract of title, and has never at any time complied with or offered to comply with any of the conditions of the contract; that at the time of entering into the contract he was unable to comply with any of its terms, nor has he been able to do so at any time since. Plaintiff alleges that he was at all times ready, wil-

ling and able to perform his part of the agreement according to its terms. He prays for a return of the $2,500 advance payment, with interest, and for $9,400 damages for nonfulfillment of the contract. The defense in substance is abandonment of the contract by plaintiff on account of inability to raise the money with which to make the necessary payment on March 1, 1919, and repudiation by him of the whole contract. At the close of the testimony the court directed the jury to return a verdict in favor of defendant upon the cause of action for damages for breach of the contract, and in favor of plaintiff upon the cause of action to recover the $2,500 paid upon the purchase price, with interest. Judgment was rendered on this verdict, and defendant appeals.

Most of the facts are undisputed. Plaintiff produced the written contract (exhibit A) set forth in his petition and testified that he paid $2,500 at the time of its execution; that the defendant failed to furnish a warranty deed or an abstract to the premises, and never offered to perform the contract; that plaintiff was ready and willing to carry out the agreement according to its terms; that he had arranged to borrow part of the money from a bank at Brainard; that he had sold 80 acres of this land to one Whitzell, under an executory contract, for $245 an acre, and that Whitzell was ready and willing to carry out this contract in accordance with its terms.

The evidence on the part of the defendant is to the effect that, prior to entering into this contract, defendant, a real estate agent or broker, had sold a farm belonging to plaintiff to one Hotovy for $40,000, to be paid in cash on March 1, 1919, plaintiff paying defendant $300 commission on the sale; that after this contract was made plaintiff desired to purchase the land described in the contract (exhibit A), which belonged at the time to one Frank Toman, who had listed the same with defendant for sale; that plaintiff inquired of defendant whether he was authorized to sell the Toman land, and at what price; that defendant informed him that he had the same listed at the price of $40,800; that

the plaintiff and defendant then went to the Farmers State Bank, of Brainard, where Mr. Hayek, the banker, wrote the contract; that plaintiff then paid defendant $2,500, the cash payment required by the contract, which money he borrowed from the bank. During the negotiations plaintiff requested that the payment of $10,000 of the amount due on March 1, 1919, be deferred for some time. Defendant informed him that he would see Mr. Toman, the owner of the land, and try to arrange this for him. A few days afterwards defendant saw Mr. and Mrs. Toman, and informed them of the plaintiff's desire to have the payment of $10,000 deferred to be secured by a mortgage upon the land. Mr. and Mrs. Toman agreed to this and they, with defendant, went to the bank at Brainard and procured Mr. Hayek to draw up a contract (defendant's exhibit 2) embodying this modification. At the same time defendant paid Toman $1,700 of the $2,500 paid by plaintiff, retaining $800 as the commission which had previously been agreed upon by him and Toman. This contract provides for the sale of the Toman land to Smolik for $40,000, reciting that $1,700 was paid in cash, $10,000 to be secured by mortgage drawing 5½ per cent. interest, and $28,300 to be paid on March 1, 1919.

It will be seen that the only change in the terms of payment from those in exhibit A was the extension of the time to pay $10,000 of the purchase price, when it is considered that credit was given in this contract for the $2,500 already paid under the other. Afterwards it developed that the mother of plaintiff, who had a life interest in the farm which he had sold to Hotovy, was dissatisfied with the sale and refused to make a conveyance of her interest. Plaintiff was therefore unable to carry out the terms of the sale to Hotovy. He therefore induced Hotovy to surrender the contract, and it was canceled by mutual consent. This deprived him of the means to obtain the $40,000 with which he had expected to make the payment due March 1 on the purchase of the Toman land. Frank Toman died on September 3, 1918, the land was devised to his widow, and an

administrator was appointed with the will annexed. Previous to his death Toman had contracted to purchase 240 acres of land, relying upon receipt of the money from plaintiff with which to make the payment due March 1, 1919. After the death of Toman, his widow and the administrator of the estate, became anxious to know whether plaintiff intended, and was able, to carry out the contract of purchase of the Toman land. The testimony of Sobota, the administrator, and of the defendant Smolik is to the effect that in two conversations which were had with the plaintiff in Brainard, in the late fall of 1918, it was stated to him that those interested in the Toman land wished to know whether he would, or intended to, complete the purchase, so that they could begin proceedings in court authorizing the administrator to make a deed to him in accordance with the contract, and that in these conversations the plaintiff stated that he could not raise the money and he could not hold both places. The plaintiff did not take the stand in rebuttal of the testimony of Sobota and Smolik as to his repudiation of the contract. Two witnesses testified that Smolik had approached them endeavoring to suborn them to commit perjury by testifying that they heard Chermak say he was unable to carry out the contract for the land, but defendant denied this, and it was admitted that one of these witnesses, at least, was on bad terms with him. From the time of these conversations until the beginning of the suit there seems to have been nothing further done by either party with reference to the contract.

The evidence further develops that the contract of plaintiff to sell 80 acres of the Toman land to Whitzell had previously been canceled by mutual consent, that by this contract Whitzell was to have a clear title by January 1, 1919, and that since Chermak could not carry out the contract by that time Whitzell desired to have it canceled, and this was done.

While the original contract for the sale of the Toman land was entered into by Smolik, apparently as the owner,

and the second contract was between Toman and Smolik, the real facts were known to all parties that Chermak was buying the land from the Tomans, and that defendant Smolik was merely an intermediary. The successors in interest of Toman made no attempt to enforce the contract as against Smolik.

Plaintiff's theory is that the contract between him and Smolik is void because Smolik had no written authority to enter into it, nor to receive the $2,500 paid upon it; that since Smolik entered into the contract in his own name he was bound to tender an abstract and a deed to plaintiff on March 1, 1919, and that not tendering nor being able to tender the abstract or deed at that time he had no right to retain the $2,500, and plaintiff is entitled to recover it with interest. Plaintiff argues that since all oral conversations were merged in the written contract, and Toman's name did not appear in it, Smolik must be treated as the real contracting party. Smolik did not have the title to the Toman land at the time he made the contract, nor had he legal authority at that time to execute such a contract, but the subsequent acceptance by Toman with full knowledge of that part of the purchase price paid by plaintiff to defendant, and the written contract subsequently entered into between Toman and Smolik whereby Toman agreed to convey the land to Smolik in accordance with the terms of the contract of Smolik with plaintiff, constituted a ratification by Toman of the act of Smolik and vested Smolik with entire power to execute a written contract of sale to the plaintiff. On March 1, 1919, Smolik could have demanded performance of the contract from Toman, if he had lived, for the same estate which he had agreed to transfer to plaintiff by the original contract, and the benefit of the contract would have inured in equity to plaintiff.

Was defendant bound to tender an abstract and deed under the circumstances? A party to an executory contract, who states to the other party, before the time for performance, that it is impossible for him to fulfil its terms, and causes the other party to believe he has abandoned it, can-

not afterwards recover back earnest money on the ground that the other party failed to tender performance at the specified time. Even though a party who has renounced a contract changes his mind and desires to carry it out, if he fails to withdraw his renunciation before the time comes for performance it will excuse the default of the other party. *Pryor v. Hunter,* 31 Neb. 678; *Carstens v. McDonald,* 38 Neb. 858; *King v. Waterman,* 55 Neb. 324; *Fahey v. Updike Elevator Co.,* 102 Neb. 249; *Hixson Map Co. v. Nebraska Post Co.,* 5 Neb. (Unof.) 388; 3 Williston, Contracts, secs. 1306, 1313-1319. If the contract was renounced and abandoned by plaintiff, defendant was not required to offer or tender performance at maturity, but had the right, at his option, to treat the contract as annulled. We think the learned trial judge properly directed a verdict for defendant on the cause of action for damages, but that he erred in directing the verdict for plaintiff.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

Note—See Agency, 2 C. J. p. 502, sec. 122—Vendor and Purchaser, 39 Cyc. p. 1542.