SYDNEY R. LANG ET AL., APPELLANTS, v. JOSEPH C. TODD, APPELLEE.

28 N. W. 2d 434

Filed August 1, 1947.    No. 32255.

*William L. Walker* and *Earl Ludlam,* for appellants.

*Beynon, Greenamyre & Hecht,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and TEWELL, District Judge.

TEWELL, District Judge.

This action was begun by Sydney R. Lang and Ilo F. Lang, husband and wife, as plaintiffs, in the district court for Lancaster County, to establish an alleged prior rescission of a written contract to convey real estate, and to clear the record title to such real estate of the record of such contract. By answer and counterclaim, Joseph C. Todd, the only defendant, admitted the execution of such contract, denied rescission thereof, and sought specific performance of such contract. Upon the trial of the issues the trial court dismissed the plaintiffs' petition, granted the defendant specific performance, and provided for the payment to the plaintiffs of the unpaid portion of the sale price. The plaintiffs appeal. We affirm the decree of the trial court.

By the written contract involved, the plaintiffs agreed to sell to the defendant, and the defendant agreed to buy from plaintiffs, Lots 9 and 10 in Block 44, original town of Lincoln, Nebraska. The sale price set forth in the contract was $45,000. The terms of the contract provide that $2,000 of the sale price would be paid upon its execution, and the balance of $43,000 "to be paid on or before June 1st, 1946 upon delivery of deed and merchantable abstract with landlords possession to be given on date of settlement." The terms of the contract made time of the essence thereof, and provided for liquidated damages in the sum of $2,000 to be paid by any party failing to perform. On the lots described in the contract was a two-story brick and steel garage building, located at 109 North 9th Street in Lincoln. It was known as the "Annex Garage." The contract was executed and dated on April 13, 1946, in a trailer house at El Dorado, Arkansas, where the plaintiffs were then operating a carnival. The sum of $2,000 was then paid by the defendant upon the purchase price. After the contract was signed, appellant Sydney R. Lang asked as to whether it would be necessary for him to go to Lincoln to close the transaction. The appellee replied

that he did not see why that would be necessary, as appellants could send their deed to W. L. Walker, their attorney who was then present, or to a Mr. Freeman at First National Bank in Lincoln. No definite arrangements for closing the transaction were made. Appellants instructed Mr. Walker upon his return to Lincoln to obtain the abstract of title from the Security Mutual Life Insurance Company, which held a mortgage upon the property, and deliver it to appellee. This Mr. Walker did about April 24, 1946.

About May 6, 1946, Mr. Walker told appellee that appellants needed an additional $5,000 at once. Thereupon the appellee had the mortgagee above mentioned prepare a note and mortgage upon the premises to be signed by appellants for an additional $5,000 loan. These papers appellee took to Hot Springs, Arkansas, where appellants were then operating their carnival. Appellee arrived at Hot Springs, Arkansas, about May 16, 1946. He was then told by appellants that the sum of $5,000 would not enable them to buy another carnival from one Mr. Vernon who was then at Durant, Oklahoma, as Mr. Vernon by then had decided that he wanted the entire purchase price of $40,000 at the time of sale. Appellant Sydney R. Lang and appellee the next day drove to Durant, Oklahoma, to see Mr. Vernon. They found that they could not arrange to buy the carnival from Mr. Vernon for reasons immaterial here. In relation to their conversation at Hot Springs, Arkansas, about May 16, and at Durant, Oklahoma, about May 17, the testimony of appellants and of appellee directly conflicts. It is the claim of appellants that appellee told them that he had purchased the property for resale to the Salvation Army at a profit, that such prospect of resale had collapsed, and that he would not and could not complete his purchase from them. Appellants testify that appellee showed them an appraisal he had had made of the property he had agreed to purchase, which showed such property to have a value of about $37,000, and told

them he would forfeit his $2,000 down payment rather than to complete his purchase. All this the appellee unequivocally denies. It will be noted at this point that appellants do not testify that they in any manner gave notice of any kind of any acceptance by them of such anticipatory breach by appellee. Appellee returned to Lincoln. The day fixed for closing the contract came and passed with no offer to perform by either party to the contract. On June 6, 1946, appellee was advised that appellants were in Harvey, Illinois, and he sent them a telegram in which he asked that they call him by telephone. This appellants did. Appellant Sydney R. Lang testifies that in this telephone conversation appellee tried to get the purchase price reduced to $37,500. This the appellee denies, and testifies that he asked Mr. Lang to send his deed so the sale could be closed, and that Lang told him he would be in Lincoln in a few days. Appellants came to Lincoln about June 19, 1946, and at least two conversations were held between appellee and Sydney R. Lang. No offer to perform was made by either party. These conversations were mostly about finding an investment for Mr. Lang. Within a few days Lang left for Pennsylvania. A week or two later appellee asked Mr. Walker to prepare and send appellants a deed for their signature. This Walker did. Appellants received the deed, but did not execute or return it. Not receiving the deed, Walker advised appellee to call Mr. Lang. This appellee did, and asked Mr. Lang to sign and return the deed. Mr. Lang said he would be in Lincoln in a few days and would see appellee. He testifies that in this conversation, for the first time after the execution of the contract, appellee stated that he would pay the full balance of the purchase price. No notice of any acceptance by appellants or of any repudiation by appellee had been given appellee as yet. Just after this conversation appellee placed his contract of record on July 8, 1946. Lang returned to Lincoln and on or about July 19, 1946, went to lunch with appellee. They

had been close friends for many years. In the latter part of the conversation after lunch the two talked about closing their real estate transaction. Lang told appellee: "I am not going to deliver this building to you." Appellee said to Lang: "Syd, we have been friends for years and you wouldn't be a welsher, would you?" Lang replied: "Well, you are the welsher. You didn't carry out your contract on June 1st." This is the first time the record shows appellants to have notified appellee of any intention on their part to elect to rescind the contract on account of any statement or act on the part of appellee. The two parted unfriendly for the first time. This action was filed four days later.

It is the claim of the appellants that appellee purchased the property at a time when he thought he would be able to sell the property to the Salvation Army at a profit; that when prospects of such sale were soon thereafter lost, the appellee took the unprincipled and unbusinesslike attitude of attempting to "chisel" the appellants into accepting a lesser amount than the contract price, and in so doing went to the extent of unqualifiedly saying that he could not and would not complete the purchase and would forfeit the $2,000 he had paid upon the contract; that later and about July 1, 1946, the appellee found that he could make a lease of the premises advantageous to himself even upon his paying the full amount he had contracted to pay, and then decided to insist upon a performance of the contract. The appellee, on the other hand, denies that he ever said he would not complete the contract, and claims that about or soon after July 1, 1946, the appellants were advised that Gold & Company was going to terminate the lease on a building that Mr. Lang was renting, in which he was conducting a garage at 10th and N Streets in Lincoln, and that Mr. Lang then decided he needed the property he had contracted to sell to appellee, and therefore attempted to refuse performance of the contract involved. The evidence strongly indicates that the claims, as above

stated, of both appellants and of appellee, so far only as the claims of one relate to the statements and attitude of the other, are both true. For the purpose of this opinion we accept such claims of both parties, so far only as the claim of one relates to the statements and attitude of the other, as being true.

It is difficult to ascertain from the appellants' petition and briefs just how they claim the interest acquired by the appellee in the real estate by his contract was extinguished or detached from him, whether by abandonment, or on account of rescission, or on account of forfeiture. In addition to the facts above stated, it may be well to state that as late as July 15, 1946, Mr. Walker had certain entries of the abstract recertified by a bonded abstracter in compliance with a requirement of appellee's attorneys, although appellants deny knowledge of this, and also that in both their petition and during trial appellants offered to return to appellee the initial payment of $2,000 and at the same time ask in their petition, and contend for in their brief, a recovery of the $2,000 liquidated damages provided for by the contract. At the time of trial the mortgage above mentioned was still a lien on the land, but the maker had the right, by its terms, to pay it in full on the first day of any calendar month. Performance by the appellants admittedly was never tendered. On June 1, 1946, the date fixed for performance, appellants, then unbeknown to appellee, were in Russellville, Arkansas. The title to the property is still encumbered by a party-wall agreement, subject to which the appellee is willing to accept the title, without diminution in purchase price.

A mere statement by a vendee in a contract for conveyance of real estate made prior to breach by him to the effect that he cannot and will not perform on the date of performance or thereafter, or his attempt to secure a reduction in the purchase price, not acted upon by the vendor, does not constitute an abandonment of his rights in such real estate. 66 C. J., Vendor and

Purchaser, § 295, p. 731. The facts in Kesterson v. Marsh, 107 Neb. 202, 185 N. W. 346, in which an abandonment was declared, are much different than in this case. We need not be concerned here with what would have been the situation had appellants, with notice to appellee, affirmatively accepted such renunciation at any time before appellee offered and demanded performance.

Appellants contend that the prior repudiation by vendee placed him in default. We think not, in the absence of an affirmative acceptance thereof by appellants. Where one party to an executory contract to sell and convey real estate, prior to breach by him and before time for performance by either party has arrived, unequivocally states that he cannot and will not perform, when the time of performance arrives, the other party may either treat such renunciation as an abandonment or breach of contract by affirmative election so to do, or he may treat such renunciation as inoperative, and await the time of performance and then hold the one party responsible for all consequences of nonperformance, including specific performance in a proper case, but in case he keeps the contract alive, it lives for the benefit of both parties, and he remains subject to all of his obligations under it, and enables the one party to complete the contract, notwithstanding his previous renunciation, with the same force and effect as if such prior renunciation had never been made. Frost v. Knight, L. R. 7 Exch. 111; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; 13 C. J., Contracts, § 729, p. 655.

The holdings above announced are to some extent in conflict with our holdings in Carstens v. McDonald, 38 Neb. 858, 57 N. W. 757, and in King v. Waterman, 55 Neb. 324, 75 N. W. 830. In each of those cases there is a syllabus to the effect that an action for the breach of an executory contract cannot be maintained before date of performance upon the unequivocal declaration by one party, before performance is due, that he does not intend to perform the contract on his part. Such holding is

contrary to the rule followed in about all, if not all, of the jurisdictions in the United States other than Nebraska, is also illogical, and contrary to the welfare of business transactions. The bringing of an action before date for performance to rescind the contract, or to recover damages for breach, upon such anticipatory breach, constitutes an unequivocal acceptance of such a renunciation, and many times may work to the advantage of all concerned. It is true that this action was not begun until after time for performance had elapsed, as was the case in Carstens v. McDonald, *supra*. Nevertheless, the holding in those cases has a bearing upon the question in this case as to whether appellants and appellee, or either of them, were in default upon failure to tender performance on June 1, 1946, and as to whether appellants must notify appellee of his acceptance of such renunciation, if he desires to treat it as a breach. To the extent that the holdings in Carstens v. McDonald, *supra,* and in King v. Waterman, *supra,* hold that an action cannot be begun before date of performance and maintained for the breach of an executory contract by an unequivocal renunciation by one party before time for performance, and to the extent that the holdings in those cases may be in conflict with the holdings herein, they and each of them, and any other like holding of this court, are hereby overruled.

It has several times been held by this court that an unqualified renunciation of an executory contract, containing mutual and dependent provisions, before time for performance by one party, excuses tender of performance by the other party at time of performance. Chermak v. Smolik, 112 Neb. 54, 198 N. W. 562, and cases therein cited. Such rule could do no more than to prevent appellants from becoming in default on June 1, 1946, by having failed to tender performance. Appellants insist that time was of the essence of the contract. No advantage of such clause was taken by appellants. After time for performance had passed, the parties per-

formed acts looking to the fulfillment of the contract. They talked of an investment for appellants' money, they had certain entries of the abstract recertified at the request of appellee's attorney through Mr. Walker, and through Mr. Walker had deeds prepared. They were long-time friends, and by their conduct toward each other paid no attention to the clause making time of the essence of the contract. Such a clause in a contract has a legal effect, but the parties by their conduct may waive the effect of such clause. Cadwell v. Smith, 83 Neb. 567, 120 N. W. 130; 66 C. J., Vendor and Purchaser, § 251, p. 695. We hold that the effect of such clause was waived in this case.

It is urged that the appellee should not be awarded specific performance, when he himself was in default of performance. We cannot find that appellee was ever in default. His renunciation prior to June 1, 1946, was not treated as a breach. He did not unequivocally renounce the contract on June 1, 1946, or subsequently, and soon after June 19, 1946, was affirmatively seeking performance, and has sought performance ever since. Where acts to be performed by parties to a contract are mutual and dependent, and are to be performed concurrently, one party must at least be able and willing to perform, in order to enable him to declare a default by the other. Johnson v. Higgins, 77 Neb. 35, 108 N. W. 168; Olson v. Woodhouse, 112 Neb. 527, 199 N. W. 815; Klapka v. Shrauger, 135 Neb. 354, 281 N. W. 612.

For reasons above given, the decree of the trial court is affirmed.

AFFIRMED.