FRIEHE FARMS, INC., A NEBRASKA CORPORATION, APPELLEE, v. REX S. HABERMAN ET AL., APPELLANTS.

214 N. W. 2d 916

Filed February 14, 1974. · No. 39031.

Frederick E. Wanek and McGinley, Lane, Mueller, Shanahan & McQuillan, for appellants.

Cunningham Law Office, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is an appeal from a decree for specific performance in favor of Friehe Farms, Inc., plaintiff, against defendants Rex S. Haberman and Phyllis L. Haberman, husband and wife. The issue involved is a narrow one: Can specific performance be decreed for the cash price specified in the contract, or did seller have the right to terminate the agreement upon a belief that the buyer could not procure land desired by seller to trade for seller's land? We affirm.

Defendants employed William B. Weir to sell their property in Red Willow County upon terms agreeable to them. Plaintiff will hereinafter be referred to as Friehe, because all transactions on its behalf were conducted by Ervain J. Friehe, its president. Friehe called Rex Haberman direct regarding a possible purchase of the property and was referred to Weir. Friehe made a trip from his home in McCook to Imperial, Nebraska, to meet with Haberman and Weir. Friehe offered to purchase the property for $97,500. The terms were as follows: "The sum of One thousand dollars deposited herewith as evidenced by receipt appearing below and the balance of $96,500.00 to be paid as follows: in cash on closing date or at the sellers option the buyer agrees to purchase land in Chase County for $97,500.00 or any part thereof and enter into a trade agreement for such land with the seller. Seller agrees to assign a First Mortgage loan with Metropolitan Insurance Company of approximately $35,-000.00 * * * This transaction shall be closed on or before 1 March, 1972 at which time seller (sellers) shall convey said property to Friehe Farms Inc. by good and sufficient warranty deed * * *." The offer, which is dated September 25, 1971, was accepted by the Habermans under date of September 27, 1971.

The parties, previous to executing the contract, had

discussed the possibility of a land trade to avoid income tax problems for Habermans, and an agreement was reached that if Rex Haberman could find land he desired Friehe would purchase it to trade, pursuant to the option in the offer.

Subsequently, Weir told defendants that Erling S. German had land in Chase County which he desired to sell, and that Weir was German's agent for its sale. Haberman indicated he would accept this land in trade. Weir communicated this information to Friehe, and sent him an offer to purchase the German land, together with a memorandum of agreement which would have tied the transaction to this trade. Neither of these documents was signed by Friehe. A meeting was held in Weir's office in Imperial on December 2, 1971, with Friehe, Haberman, Friehe's attorney Cloyd Clark, Jr., and Weir. At this meeting Clark produced a new offer of purchase for the German land to replace the one sent by Weir. Friehe signed this contract and deposited $5,000 with Weir as earnest money for the German land.

While German was told about the transaction and orally agreed to it, the contract was not submitted to him for his signature. Neither German nor Haberman signed it. German, who testified by deposition, stated he was told the contract was in the possession of Weir, but was never asked to sign it. German indicated he was ready, willing and able to sell his land to Friehe on January 3, and again on January 11, 1972.

The contract of sale for the German land provided for acceptance by German on or before December 15. This date was subsequently changed to December 30, 1971. On that date, Weir informed Friehe's attorney by telephone that German would not sell. The record indicates Weir was apparently concerned with some problem which German testified had been worked out. The evidence also indicates that Weir apparently knew German could have cleared title to the land in question but did

not convey this information to Friehe or his attorney.

Defendants knew the time for closing the contract between Friehe and German had been extended to December 30, 1971. They also knew Friehe was ready to perform at that time. However, German and Weir had agreed to postpone the closing until January 3, 1972.

When Weir advised Clark on December 30 that German would not sell, Clark on behalf of Friehe, wrote Weir as follows:

"Dear Bill:

"I was sorry to hear from you on the phone this morning that Mr. Haberman was not ready to close the German land sale and the Friehe Farms, Inc. land sale as scheduled at 1:00 p.m. on December 30, 1971. However, the contract between Haberman and Friehe Farms, Inc. which you drafted and have in escrow does provide for closing on March 1, 1972, which is plenty of time.

"In confirmation of our telephone conversation, Friehe Farms, Inc., hereby withdraws his offer to purchase Section Thirty-five (35) in Township Seven (7) North of Range Thirty-eight (38) West of the Sixth P.M. in Chase County, Nebraska. But as I told you on the phone, he stands ready to remake his offer for the German land or for other land if Mr. Haberman wishes to exercise his trade option under the Haberman-Friehe Farms, Inc. contract. If Haberman does not desire to exercise his trade option, Friehe Farms, Inc. is ready to close the Red Willow County land purchase on a cash basis at any time on or before March 1, 1972.

"Please remember that Mr. Friehe and Friehe Farms, Inc., has relied on your professional ability as a realtor in this land transaction and still relies on you to arrange the time table on his closing." A copy of this letter was sent to Rex Haberman.

On January 11, 1972, Rex Haberman wrote the following letter to Weir: "Under the terms of the contract that I have with Friehe Farms Inc., I am going to exercise the

option that the buyer agree to purchase land for me in Chase County, and trade for my land in Red Willow County.

"I have been advised that the land Friehe Farms Inc. was to purchase from Mr. German; which was to be traded for my farm in Red Willow County, is not available.

"I therefore wish to resend (sic) the contract, and have you return to Friehe Farms Inc. any down payment that they may have made."

Weir then wrote Clark on January 13, 1972, as follows: "I am enclosing a copy of a letter I have received from Mr. Haberman instructing me to return the $1,000.00 escrow check from Friehe Farms, Inc. on his purchase contract dated 25 September, 1971.

"Mr. Haberman feels that he has the option to cancel this contract at this time."

Under date of January 19, 1972, Clark wrote Rex Haberman the following:

"Mr. Friehe is not going to allow you to rescind your contract. As I stated in a letter dated December 30th, Mr. Friehe has always been and is ready at the present time to tend (sic) a complete payment for your Red Willow County property.

"Your action instructing Mr. Weir to return Mr. Friehe's escrow deposit constitutes a breach of your contract with Mr. Friehe and unless you correct that action, Mr. Friehe will resort to the courts for performance of your contract."

Defendants assert the agreement is a conditional one. They argue that failure of the condition precedent voids the contract. Plaintiff contends the agreement does not contain a condition precedent but merely gave the seller an opportunity to receive payment in land rather than cash. It is plaintiff's position that the contract was binding until March 1, 1972. Until that time defendants possessed an option to have plaintiff acquire available land

and enter into a trade agreement. If defendants did not select available land for trading purposes, then Friehe would be obligated to pay the cash price.

We do not agree with defendants that their option was a condition precedent. We interpret it as merely an option to take payment in land rather than cash. The word "or" is a disjunctive participle used to express an alternative, or to give a choice among two or more things. Sellers had an option to designate available property to be secured for trading purposes but they could not defeat the agreement by failing to exercise this option.

The parties by their subsequent actions have to some extent clarified the sales contract. They are in agreement that the selection of land for trading purposes was solely within defendants' discretion. It is also clear that the total cost to Friehe was to be the same even if a trade were involved. Defendants chose the German land and made this selection known to Friehe through their agent, Weir. The fact that the German deal fell through was in no way attributable to Friehe or his attorney.

Pursuant to the contract, defendants selected the German land as suitable for trade. They advised Weir to notify Friehe. Friehe promptly executed the offer to purchase German's land which was referred to earlier. On December 30, 1971, the date for German's acceptance of that offer, Friehe's attorney was told by Weir that German's land was not available. Neither Friehe nor his attorney was ever subsequently informed otherwise. Friehe then withdrew his offer for the German land but advised both Weir and Rex Haberman that he was ready to remake the offer if the land became available, or procure other land if Haberman wished to exercise his trade option under the contract. Friehe also advised them he was ready to close the land purchase on a cash basis at any time on or before March 1, 1972, the date specified in the contract.

Defendants attempt to premise their rescission on the

withdrawal of Friehe's offer for the German land. In fact, that offer for the German property had expired by its own terms. German had never signed the contract, and Friehe was told the property was not available. It is evident that Friehe was merely securing the return of his $5,000 earnest money because his offer had expired. It is also evident that Friehe was willing to do whatever was necessary to consummate his contract with the Habermans.

The evidence conclusively shows that both Weir and Haberman knew Friehe remained ready to perform. Weir knew that on January 3, 1971, the German land was still available, but he did not transmit this information to Friehe. His silence in this regard is not explained. Weir's listing contract with German was oral but German substantiated the agency. Yet, although German was shown the Friehe offer and testified he at all times was willing to go along with it, Weir at no time asked him to sign it.

On January 11, 1972, Haberman informed Weir he wished to rescind because the German land was not available. At this time nearly 2 months remained prior to the March 1, 1972, closing date for the contract between plaintiff and defendants. German testified his land was still available on January 11, 1972. When Friehe was advised of defendant's action, his attorney immediately wrote Rex Haberman reiterating Friehe's willingness to complete the contract and demanding that defendants fulfill their obligations thereunder. Defendants ignored this demand for performance. None of the parties thereafter made any effort to consummate the transaction.

An action for specific performance is triable de novo on appeal to this court. § 25-1925, R. R. S. 1943.

The trial court held defendants' action in canceling the contract was unilateral and unprovoked. It also held that further tenders by plaintiff would have been of no effect and were not required. We interpret the trial

court's holding to be that plaintiff's performance of the trade option was excused by defendant's rescission.

Rex Haberman testified that after December 30, 1971, he considered the deal off, but he would have performed at all times up to and including March 1, 1972, if plaintiff had secured the German land. However, defendants at no time informed plaintiff of this readiness to perform. Defendants made no response of any kind to the letter of January 19, 1972, which indicated Friehe's willingness to perform the terms of the contract and his intention to hold defendants to it.

We interpret defendants' action as an unequivocal statement that they would not perform. An unqualified renunciation of an executory contract before time for performance by one party excuses tender of performance by the other party at the time set for performance. See Lang v. Todd (1947), 148 Neb. 726, 28 N. W. 2d 434. Since plaintiff's further performance was excused and specific performance of the trade agreement became impossible due to action of the defendants, the relief granted to plaintiff by the trial court is correct.

There is an additional ground for affirmance of this case. Weir, while acting in an agency capacity for defendant, frustrated Friehe's attempts to secure the German land. Friehe first contacted Rex Haberman about the property and was referred to Weir. With reference to the German land, Weir, who was the agent for its sale, contacted defendants. They approved it as acceptable trade property and directed him to communicate this information to plaintiff. All plaintiff's dealings with reference to the German land were with Weir and Rex Haberman. Friehe did not know and had never met German. German testified that he had never seen nor met Friehe. All German's conversations concerning his property were with either Rex Haberman or Weir. Friehe throughout appears to have done everything reasonable to comply with the requests of defendants.

Weir was the agent of defendants at all times pertinent to the transactions herein. He was so appointed in the listing contract. Friehe was referred to him by Rex Haberman. Weir was also the agent of Erling G. German. This dual agency, however, did not affect his continuing agency for defendants. The two, under these circumstances, were compatible. It is obvious Friehe relied on Weir as the agent for both defendants and German throughout the transaction. The evidence would indicate that Weir may have been negligent or even deceitful in the transaction. To the degree that plaintiff justifiably relied on Weir as defendant's agent in these matters, defendants must bear the responsibility. Regardless of who is responsible for the failure to close the German purchase prior to the rescission on January 11, 1972, defendants must bear the entire burden for the failure of the transaction thereafter. This action foreclosed any possibility of performance by Friehe.

For the reasons given above, the judgment of the trial court is affirmed.

AFFIRMED.

SMITH, J., not participating.