DUANE H. MENKE ET AL., APPELLANTS, v. NORMAN C. FOOTE ET AL, APPELLEES.

261 N. W. 2d 635

Filed January 18, 1978. No. 41315.

E. Dean Hascall, for appellants.

Philip H. Robinson, Jr., for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action for specific performance of a contract for the sale of real estate. The District Court dismissed the action. It found time was of the essence and plaintiffs failed to perform within the time specified. We affirm.

The parties stipulated that sometime during the first 2 weeks of August 1973, plaintiffs and defendants Foote entered into an agreement over the telephone for the sale of the land in question by Footes to plaintiffs. The purchase price was $18,000 net to the Footes.

On August 15, 1973, plaintiffs sent Footes a uniform purchase agreement which they signed on August 18. It had the provision: "Seller agrees to furnish to Purchaser or his agent within 45 days from date of the acceptance of this offer or loan approval, a complete abstract of title, certified to date by a bonded abstracter, or a title insurance commitment (binder). * * * Purchaser agrees to close said purchase within 120 days after delivery of said abstract of title or title commitment, or in the event defects are found in said title, within ten (10) days after such defects are cured." The parties stipulated the contract was orally modified by plaintiffs' agreement to pay all expenses related to the abstract or obtaining title insurance. Plaintiffs were to prepare the deed of transfer and the $18,000 was net to the Footes.

Plaintiffs received the abstract on August 20, 1973, accompanied by a letter from Mrs. Foote stating:

"We hope it doesn't take 120 days to clear this up!" There was no further communication between the parties until after December 18, 1973, which was stipulated to be the 120th day after the delivery of the abstract.

It was stipulated the abstract was in the possession of plaintiffs' attorney from August 25, 1973, to January 9, 1974, and that the Footes had a marketable title from August 15, 1973, on. Although plaintiffs' attorney told plaintiffs the title was clean, no attempt was made to have the abstract extended until January 9, 1974, when it was delivered to an abstracter. The abstract was brought up to date and certified on January 10, 1974.

In late November 1973, Earl Faust, Jr., an officer and stockholder of defendant Avery Rents, Inc., telephoned the Footes in an attempt to purchase the real estate involved in this action. He was told someone else had an option on the property until December 18, 1973. He called again on December 21, 1973. He was then advised the other prospective purchaser had not bought the property. Footes agreed to sell it to him for $18,000. He mailed a check for $7,500 on December 22, 1973. The balance was paid by a check for $10,000 dated January 25, 1974, and a check for $500 dated January 28, 1974. The deed from the Footes to Avery Rents, Inc., was recorded February 6, 1974.

Mrs. Foote testified when Faust called her in November she informed him of the purchase agreement although she did not tell him who the purchaser was. Duane Menke, one of the plaintiffs, testified he called Mrs. Foote on December 21, 1973, after learning of the contract with Avery Rents, Inc. He at that time offered to complete the transaction, but she refused. Mrs. Foote denied receiving any call directly from the plaintiffs. It was stipulated plaintiffs' attorney did telephone the Footes' attorney on December 21, 1973. He made a notation con-

cerning the call. It is as follows: "Re: N. Foote Dean Haskell — 291-8900 (Nebraska Attorney) called regarding real estate transaction between N. Foote and his clients. Said closing was held November 30, subject to Sellers providing abstract or title insurance. He has not received either as of 12/21/73. He said money is being held in escrow for the purchase."

On December 26, 1973, Footes' attorney wrote plaintiffs' attorney advising the abstracting had been plaintiffs' responsibility. He further stated that because there had been no communication from plaintiffs since August, the Footes believed they had abandoned the purchase. In any event, plaintiffs had failed to perform by closing within 120 days.

Plaintiffs' attorney replied on December 31, 1973, regretting that there had been a misunderstanding. He stated the language in the contract would control. He further advised Footes' attorney that in the event Footes refused to close, plaintiffs would have no alternative but to go the specific performance route.

In a letter dated January 15, 1974, to Footes' attorney, plaintiffs' attorney stated he was enclosing a form deed and a certified check for $17,500 which with the previous $500 was intended to be a tender of payment under the contract accepted by his clients August 18, 1973. He further stated it was his clients' contention the Footes had made him their agent for the purpose of securing an updating of the abstract or necessary title insurance, and that he was allowed 45 days to do so. He further contended plaintiffs were entitled not only to 120 days after delivery of the abstract but also an additional 45 days for completing work on the abstract. In this letter he enclosed a copy of the bill for the extension of the abstract and requested payment.

The plaintiffs and the Fausts had discussions about the property in January and February 1974,

but were unable to work out any agreement. There was no further communication by the plaintiffs with any of the parties after February 25, 1974. This action was filed December 29, 1975.

Several issues, including misrepresentations and laches, were presented in the trial court. Although briefed, they will not be discussed herein. The trial court found time was of the essence by the intent of the parties outside the written terms of the contract, and that defendants did not refuse or fail to conform to the terms of the contract during the time it was in effect. This is the only issue presented by this appeal.

An action for specific performance is triable de novo on appeal to this court. § 25-1925, R. R. S. 1943; Friehe Farms, Inc. v. Haberman, 191 Neb. 292, 214 N. W. 2d 916 (1974). In a trial de novo in the Supreme Court, it is settled law that this court, in reaching its own findings, will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. Schuller v. Schuller, 191 Neb. 266, 214 N. W. 2d 617 (1974).

In the ordinary contract for the sale of real estate, time is not of the essence unless so provided in the instrument itself or is clearly manifested by the agreement construed in the light of surrounding circumstances. Dowd Grain Co., Inc. v. Pflug, 193 Neb. 483, 227 N. W. 2d 610 (1975).

The purchase agreement did not provide that time was of the essence. The question, therefore, is whether that fact is clearly manifested when the agreement is construed in the light of the surrounding circumstances. There is no question the Footes expected the transaction to be closed within 120 days. It was covered in the telephone conversation as indicated by the fact the purchase agreement, which the plaintiffs drew, provided for closing within 120 days after the delivery of the abstract. This is

further indicated by Mrs. Foote's letter of August 18, 1973, forwarding the abstract. In it she stated, using an exclamation point: "We hope it doesn't take 120 days to clear this up!" When asked if Mr. Menke had indicated to her when closing could be had, she stated: "My understanding was that it could be completed very rapidly. However, we did agree that we would — he could make the contract out for 120 days, but we expected it to be fulfilled much earlier."

When the uniform purchase agreement was forwarded to the Footes, it was accompanied by the following note: " 'Mrs. Foote, on these forms all that is necessary for you to do is to read it, sign your name and your husband sign his name on back of form where X'd. Also please date the form when you sign it. We'll be waiting for your reply and the abstract. Thank you, Duane and Pate Menke.' "

The trial court specifically found that, although not mentioned in the purchase agreement, time was of the essence in the transaction. On the record presented we cannot say that conclusion is clearly wrong. In any event, the plaintiffs were very dilatory after the abstract was forwarded to them. The Footes could well have concluded that plaintiffs had lost interest in the transaction.

The parties agree the expense to bring the abstract up to date or provide title insurance was to be borne by the plaintiffs and not the defendants. Yet demand was made on the Footes by plaintiffs' attorney on December 21, 1973, for the delivery of a complete abstract. This was 3 days after the 120 days had expired. The abstract had been in the possession of the attorney making the demand since at least August 25, 1973. It had been received by the plaintiffs August 20, 1973.

On January 15, 1974, plaintiffs' attorney forwarded a certified check for the payment of the balance on the purchase price. He also enclosed an abstracter's

bill for payment by the defendants Foote. It was not until February 5, 1974, that plaintiffs' attorney wrote advising that if the abstracting bill was the cause of the hangup the plaintiffs would pay it. The Footes had conveyed the property to Avery Rents, Inc., February 4, 1974.

In Russell v. Western Nebraska Rest Home, Inc., 180 Neb. 728, 144 N. W. 2d 728 (1966), we said: "A party who seeks specific performance must show not only that he has a valid legally enforceable contract, but also that he has substantially complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant, or that he is ready, able, and willing to perform his obligations under the contract and do whatever has been made a condition precedent on his part, or show a valid excuse for nonperformance of the covenants incumbent upon him."

It is evident to us, as it must have been to the trial court, that the plaintiffs did not move on the contract until they learned someone else was interested in the land. They got interested too late. This was more than 120 days after the delivery of the abstract. Yet, even at that time, plaintiffs did not offer to perform in strict accordance with the agreement made. It was not until after the land had actually been conveyed to someone else that plaintiffs finally offered to perform the contract in accordance with its terms.

As we said in Lacy v. Deyle, *ante* p. 365, 258 N. W. 2d 826, (1977): "A purchaser's right to specific performance may be lost by his failure to perform the contract, and whether specific performance should be granted in a particular case rests within the sound discretion of the trial court."

Specific performance of a contract by a court of equity is not generally demandable or awarded as a matter of absolute legal right, but is directed to and

governed by the sound legal discretion of the court, dependent upon the facts and circumstances of each particular case. It will not be granted where enforcement would be unjust and may be denied when the party seeking it has failed to perform. Schommer v. Bergfield, 178 Neb. 140, 132 N. W. 2d 345 (1965).

In the exercise of his discretion, on the evidence presented, the trial court has denied specific performance. We find there has been no abuse of discretion herein and affirm.

The judgment is affirmed.

AFFIRMED.