RUDOLPH KLAPKA, APPELLEE, V. NORA E. SHRAUGER, APPELLANT.

281 N. W. 612

FILED OCTOBER 11, 1938. No. 30395.

*Kenneth S. Wherry* and *J. A. McGuire,* for appellant.

*Marcus L. Poteet, Charles A. Dafoe* and *Hall, Cline & Williams, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

This is an action for the rescission of a land sale con-

tract and to recover the payment of $1,000 made by the plaintiff to the defendant at the time the contract was executed. The defendant denied breaches of contract set out in plaintiff's petition, and alleged the delivery of possession of the land to the plaintiff and his entry into possession, and his continued possession thereof for six months, and asked that the contract be reformed. The court entered a decree finding for the plaintiff, and giving him judgment for $1,000, with 6 per cent. interest, and dismissed the cross-petition of the defendant, from which defendant appeals.

The evidence of the defendant is to the effect that she first met the plaintiff when he came to her home with his wife in the summer of 1934 and asked her if she would sell him a 120-acre farm located east and north of Pawnee City, Nebraska. She told him she would think it over and let him know, and finally offered to sell it to him at $75 an acre. Plaintiff said the price was too high, as it had a lot of bindweed on it, and he was not interested at that price. Plaintiff later had a friend correspond with her to get a lower price. This man, Frank Oxner, of Belle Plaine, Iowa, concealing the fact that he was acting for plaintiff, finally made an appointment by long distance telephone to meet them at the bus station in Wymore, but when she and her daughter went to Wymore to meet the bus on August 20, 1936, it turned out that the plaintiff, Rudolph Klapka, was there instead of Frank Oxner. He did not want anybody to see him as he was driven through Pawnee City. He was driven out to the farm, and looked around a little, and told her he knew the place better than she did. Plaintiff was anxious to buy the place, and insisted that a contract be drawn up that night. The terms of the contract were agreed upon. Defendant testifies that he wanted to move on the place immediately, and defendant said that she had another farm to which Mr. Yarpe, her tenant, could move. Plaintiff would not go to town, but stayed at the farm which he was buying and talked to the tenant while the defendant drove to Pawnee City and had Mr. Halderman, a business man, pre-

pare the contract, because she could not get her attorney. After the contract was drawn, the defendant and her daughter and Mr. Halderman drove back to the farm, about six miles from Pawnee City. Plaintiff was not at the farm, but was found at the defendant's home, waiting for them. It was then between 9 and 10 o'clock at night. Mr. Halderman read the contract over to plaintiff, and plaintiff and defendant signed the contract.

The contract was dated August 20, 1936, and provides for the sale of the 120-acre farm for $7,000, of which $1,000 cash was paid by check that night. Defendant was to pay one-half of the 1936 taxes, and possession of the premises was to be given March 1. Then follows this paragraph: "Party of the first part to execute a warranty deed showing the above land to be clear of all encumbrance; and deposit the same in escrow with the Citizens State Bank, Pawnee City, Nebraska, and to be delivered to the party of the second part upon his paying $3,000 and executing a first mortgage on the above land for $3,000 at five per cent. to run for two years from March 1st, 1937, to the party of the first part."

A careful examination of this contract discloses that it contains no statement to the effect that time is of the essence of this contract.

The next day after signing the contract plaintiff came back to the farm with Mrs. Shrauger, the defendant, and told the tenant he had bought the place and wanted to get possession. Defendant thereupon gave the tenant another farm. Plaintiff took possession of the said real estate on September 1, 1936, moving his family, consisting of his wife and two sons, with all live stock, farming machinery, and equipment onto said farm he had purchased, and continued in such possession and control until on or about March 6, 1937.

In February, 1937, the plaintiff came to defendant's home and complained that there was a shortage of water on the farm he had bought, and demanded that she give him back $500 on his first payment of $1,000 on the purchase

price, which she refused to do. A few days later the defendant received a written notice, dated February 27, 1937, from Attorney Witte, a copy of which appears in the bill of exceptions as exhibit No. 3, and in which she is notified that said attorney has examined the agreement signed up August 20, 1936, and the abstract of title, and that she has breached the agreement by not depositing in escrow a deed that would convey title to said real estate, and that she must of necessity breach the agreement further on March 1, 1937, because it will be impossible for her to convey title that day; that his client elects to and does rescind the agreement; that she may have her abstract by demanding the same at the office of said attorney, and that his client will in no way interfere with her possession of the real estate, and in conclusion said notice demanded the immediate payment of $1,000 which had been paid by the plaintiff to the defendant on August 20, 1936.

The petition of the plaintiff admits the execution of the contract, and charges that upon the date the contract was executed the defendant owned only a one-third interest in the land. she contracted to convey, one-third interest belonging to her son, John Shrauger, and the other one-third interest belonging to her daughter, Ena June Shrauger, who was then a minor and incapable of conveying said real estate, and that such defendant had led the plaintiff to believe that on the date of the execution of the contract she was the sole owner of the real estate, and that he relied thereon until February 26, 1937, when he discovered the defendant's inability to perform said contract; that the defendant's breaches of said contract are material, and for that reason the plaintiff has elected to and has rescinded the contract, and asks judgment for return of the $1,000 cash payment made upon the signing of the contract.

Plaintiff also alleged in his petition that on March 1, 1937, the defendant tendered to the plaintiff a deed executed by the defendant and by her son, John Sterling Shrauger, and also executed by Ena June Shrauger, who was a minor, who would arrive at her majority June 13,

1937. The evidence discloses that this daughter, Ena, was in her twentieth year, and drove the automobile to the bus station in Wymore to meet the plaintiff when he arrived, and was with her mother the night the contract was drawn up, and brought the same out to their home, where it was duly read to the plaintiff and executed by him and by her mother, the defendant herein. She assisted materially in all of the negotiations leading up to the signing of the contract, and duly executed a warranty deed conveying her interest therein, although she was not yet 21 years of age at the time of signing the first deed.

The defendant, in her amended answer and cross-petition, denies that any breach of the contract occurred, and as a part of said amended answer and cross-petition tendered into court a warranty deed, executed by herself and son, and by the daughter after she had become 21 years of age, together with an abstract of title showing merchantable title in the three grantors, and defendant asked the court to reform the contract to show the true intention of the parties was that a deed would be given by the defendant and her son on March 1, 1937, and the interest of her daughter be conveyed by deed to be given on June 13, 1937, and defendant asked the court for a decree of the specific performance of the contract as thus reformed.

Plaintiff in his reply denied all new matter, and the trial court found for the plaintiff, and gave judgment for the return of the $1,000, from which defendant appeals.

The plaintiff insists that, when a vendor contracts to sell and convey land, and is unable to comply with the terms of his contract, the vendee is entitled to recover back any payments made on the purchase. *Durland Trust Co. v. Augustyn,* 110 Neb. 800, 195 N. W. 172. Plaintiff also insists that, if a written contract for the sale of real estate fixes no definite time for the delivery of the deed, yet if from the context it is apparent that in contemplation of the parties it must be delivered before a certain time, then the court should construe the contract to mean that the delivery should be within a reasonable time, and on or before the

date at which it must be delivered, in order to carry out the terms of the contract. *Fletcher v. Brewer*, 88 Neb. 196, 129 N. W. 288. It is further contended by the plaintiff that "An ambiguity in a written contract prepared by one of the parties should ordinarily be resolved in favor of the party who did not prepare it." *People's State Bank v. Smith*, 120 Neb. 29, 231 N. W. 141. The plaintiff further insists that, if the vendor is absolutely unable to perform at the time agreed upon, the purchaser need not tender performance, and under such circumstances he is not bound to pay or tender payment of unpaid purchase money, or to give security for the unpaid purchase money, for the law does not require the doing of a vain thing. 66 C. J. 818; 40 A. L. R. 696, Ann.

To meet these propositions of law laid down by the plaintiff, the defendant says that, where both parties fail to perform on the day named, they will be held to have waived strict performance as to time. The contract will remain otherwise unimpaired. Dysart, Mortgage Foreclosures, sec. 178; *Cadwell v. Smith*, 83 Neb. 567, 120 N. W. 130. And, again, that where time is not made the essence of a contract the vendor is entitled to a reasonable time to procure or perfect his title. 57 A. L. R. 1519, Ann. If an infant affirms a contract after attaining majority, the contract may not thereafter be voided on the ground of infancy. *First Nat. Bank v. Guenther*, 125 Neb. 807, 252 N. W. 395.

These conflicting citations are quite confusing, and depend upon the facts in each case. We have failed to find any decision exactly in point, in Nebraska or in other jurisdictions, on a similar state of facts to the case at bar.

"Rescission or cancelation will not be granted for a mere breach (of contract) not so substantial and fundamental as to defeat the object of the parties in making the agreement." *White v. Massee*, 202 Ia. 1304, 211 N. W. 839, 66 A. L. R. 1434.

It is said: "The decided weight of authority now is that any deed of an infant is voidable only, so that the title passes by it and remains in the grantee until some clear

act of disaffirmance is done by the grantor after coming of age." 8 R. C. L. 949, sec. 23. See *Curtice Co. v. Kent*, 89 Neb. 496, 131 N. W. 944.

"A party who has substantially broken the contract cannot rescind it on the ground that the other party subsequently refuses or fails to perform." 12 Am. Jur. 1018, sec. 438.

"A covenant by a purchaser to pay, and by the vendor to convey a good title, both to be performed at the same time, are mutually dependent, and neither party can claim a breach without a tender of performance and offer to perform upon due performance by the other, or, at least, proof of readiness and willingness to perform." *Nicolopoolos v. Hill*, 59 A. L. R. 185 (217 Ala. 589, 117 So. 185).

"It is not every breach of a contract or failure exactly to perform—certainly not every partial failure to perform—that entitles the other party to rescind. A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement." 12 Am. Jur. 1020, sec. 440. See *Schlake v. Healey*, 108 Neb. 35, 187 N. W. 427.

Many cases hold that, where time is not of the essence of the contract, the vendor is entitled to a reasonable time and opportunity to secure or perfect the title. In such cases a sudden determination to end the transaction will not be permitted without giving the vendor a reasonable length of time in which to perform. The question as to what is a reasonable time is one for the court to determine. If the time of such performance is uncertain and indefinite, the other party is not required to keep himself in readiness to perform; but, on the other hand, if the date of possible and probable performance is fixed and definite, and not far in

the future, courts will be liberal in allowing the vendor a reasonable time to perform where there is no provision in the contract that time is of the essence of the contract. *Nass v. Munzing*, 100 N. J. Eq. 421, 136 Atl. 344.

"Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party." Restatement, Contracts, 406, sec. 276 (a).

"In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract where the delay can be compensated for by interest on the purchase money or otherwise, unless (i) the contract expressly states that performance at or within a given time, is essential, or (ii) the nature of the contract, in view of the accompanying circumstances, is such that enforcement will work injustice." Restatement, Contracts, 406, sec. 276 (e).

In the case at bar, the relations between the members of the defendant's family, the mother and son and daughter, are shown to be very friendly. The mother was the legal guardian of her 20-year-old daughter, and had the right and assumed to speak and act for all three of them in renting the farm to a tenant, and in signing up the contract to sell this farm. The son and daughter signed every deed the mother presented to them relating to this farm sale.

A severe hardship will be worked upon the defendant through the enforcement of the forfeiture, which is clearly out of proportion to the damages caused by the breach in the alleged failure of the minor daughter to be able to transfer her interest in the land for 105 days after March 1. The plaintiff was put in peaceable possession of the farm on September 1, and remained so until several days after March 1, when he voluntarily moved out. This court cannot see what hardship he would have suffered in remaining in possession a short time longer until the daughter could

affirm her deed already given by giving an additional deed after she became of age.

This court has reached the conclusion that the trial court erred in entering its decree for the plaintiff, and the same is hereby

REVERSED.