affirmatively showed that Hessler had met the legal standard of competency.[40]

[16] As to his claims of errors or misconduct at trial and ineffective assistance of counsel, such claims were inappropriate for coram nobis relief. The writ of error coram nobis is not available to correct errors of law.[41] We find no error in the district court's denial of a writ of error coram nobis.

## VI. CONCLUSION

Except for Hessler's argument citing to *Martinez,* the claims raised in Hessler's second motion for postconviction relief either were litigated in the prior proceedings or were known and could have been litigated. As such, they were procedurally barred. And Hessler's claim of ineffective assistance of postconviction counsel, relying upon *Martinez*, was without constitutional support. He similarly failed to raise any basis warranting coram nobis relief. We affirm the denial of Hessler's second motion for postconviction relief and writ of error coram nobis.

AFFIRMED.

HEAVICAN, C.J., not participating.

---

[40] See *Hessler, supra* note 4.

[41] *Diaz, supra* note 35.

---

MARK STAUFFER AND CINDI STAUFFER, HUSBAND AND WIFE,
APPELLEES, V. BETTY JEAN BENSON, APPELLANT.
___ N.W.2d ___

Filed July 25, 2014.    No. S-13-928.

1.  **Breach of Contract: Damages.** A suit for damages arising from breach of a contract presents an action at law.
2.  **Trial: Witnesses.** In a bench trial of an action at law, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony.
3.  **Judgments: Appeal and Error.** The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.
4.  **Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

5. **Contracts: Waiver.** A party to a contract may waive the provisions made for his or her benefit.
6. **Breach of Contract.** In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform.
7. ____. The question whether there has been repudiation or whether repudiation was justified is a question of fact.
8. **Contracts: Tender: Time: Waiver.** An unqualified renunciation of an executory contract before time for performance by one party excuses tender of performance by the other party at the time set for performance.
9. **Breach of Contract.** A covenant by a purchaser to pay, and by the vendor to convey a good title, both to be performed at the same time, are mutually dependent, and neither party can claim a breach without a tender of performance and offer to perform upon due performance by the other, or, at least, proof of readiness and willingness to perform.

Appeal from the District Court for Phelps County: Stephen R. Illingworth, Judge. Affirmed.

Stephen G. Lowe for appellant.

Bradley D. Holbrook and Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## NATURE OF CASE

In this breach of contract action, Mark Stauffer and Cindi Stauffer, husband and wife, the appellees, entered into an agreement (Purchase Agreement) with Betty Jean Benson under which the appellees were to purchase Benson's undivided one-third interest in certain real estate for $150,000. The contract was not performed, and the appellees filed an action against Benson in the district court for Phelps County. At the time of the bench trial, Benson no longer had title to the property. In an order filed August 2, 2013, the court determined that Benson had breached the Purchase Agreement by refusing to sell her interest in the property to the appellees. The district court found in favor of the appellees and

against Benson and awarded damages to the appellees. Benson appeals. We affirm.

## STATEMENT OF FACTS

This case involves a parcel of real estate, a farm, located in Phelps County, Nebraska. Initially, Vern Johnson and Josie Johnson, husband and wife, owned the 160-acre parcel of real estate. Vern passed away in 1970, and after Vern's death, the property passed equally to the couple's three children, Gary Johnson, Nancy Ashcraft, and Benson, subject to a life estate in favor of Josie. Josie passed away in September 2010.

Cindi is the daughter of Gary. In 1987, the appellees moved onto the property and began a farming operation. At trial, the parties testified that there were numerous discussions regarding the execution of the "family plan" to sell the farm to the appellees in order to keep it in the family. These discussions occurred between the appellees and Benson prior to and after the execution of the Purchase Agreement which is at the center of this case.

Due to issues within the family, the farm became the subject of a partition sale, and ultimately, the property was sold at a partition sale. The appellees were named as parties in the partition action. Before the partition sale occurred, the appellees had entered into negotiations with Benson, Ashcraft, and Gary to purchase their interests in the property. The Purchase Agreement between the appellees and Benson was signed after the partition action had been filed but before sale.

With respect to the negotiations between the appellees and Benson, on January 18, 2011, an attorney, acting on behalf of and at the direction of Cindi, sent a draft purchase agreement to the appellees and to Benson. Under the Purchase Agreement, the appellees were to pay a deposit of $200 and to purchase Benson's undivided one-third interest in the farm for a total of $150,000. With respect to the $200, the Purchase Agreement stated: "$200 deposited herewith as evidenced by [Benson's] receipt attached below. Balance to be paid as shown in Paragraph(s) 1 following, which paragraph(s) numbered 1&2 inclusive as being applicable to this agreement." The

balance of $149,800 was specifically discussed in Paragraph 1. Paragraph 1 of the Purchase Agreement provided:

> 1. Conditional Upon Loan:
>
> Balance of $149,800 to be paid in cash or by certified check at time of delivery of deed, conditional however, upon [the appellees'] ability to obtain a loan to be secured by deed of trust or mortgage on above described property [the farm], in the amount of $148,000. Said loan to be FSA (Farm Service Agency) with terms providing for interest not exceeding 5% per annum, and annual payments of approximately $N/A plus taxes and insurance. [The appellees] agree to make application for said loan within 30 days from the date of acceptance or this offer shall be null and void and the earnest money shall be forfeited.

The Purchase Agreement originally set the closing date for May 1, 2011.

On January 24, 2011, Benson appeared at the office of the appellees' attorney and signed the Purchase Agreement. The attorney did not discuss the terms and conditions of the draft purchase agreement with Benson. On January 25, the appellees' attorney sent a letter to them informing them that Benson had signed the Purchase Agreement. The appellees signed the Purchase Agreement approximately 1 week later.

After signing the Purchase Agreement, the appellees sought funding through the Farm Service Agency (FSA), which they ultimately did not obtain. However, the appellees' friends, Karen Kirby and Scott Kirby, agreed to loan $150,000 to the appellees, and they executed a promissory note on February 8, 2011. Per the promissory note, the appellees were to repay the note in full by February 8, 2012.

During this time, the appellees were also attempting to negotiate a price for Ashcraft's undivided one-third interest in the property. The appellees already had assurances from Gary, Cindi's father, to purchase his undivided one-third interest. Benson was aware of the appellees' negotiations with Ashcraft, and on April 28, 2011, Benson agreed to extend the closing date of the Purchase Agreement for her undivided one-third interest from May 1, 2011, to March 1, 2012.

The negotiations with Ashcraft were complicated due to matters involving Josie's estate in which questions had been raised regarding Ashcraft's handling of the estate. On June 14, 2011, Ashcraft's attorney sent a letter to the appellees' counsel and Benson's counsel offering to sell Ashcraft's one-third interest to the appellees for $185,000, conditioned on Ashcraft's being released from any liability on issues regarding Josie's estate.

On July 7, 2011, the appellees' attorney sent a letter to Ashcraft's attorney indicating that the appellees would purchase Ashcraft's interest for $185,000. The letter also stated that "[e]veryone is having a difficult time getting . . . Benson to sign the estate settlement agreement."

On July 18, 2011, Ashcraft's attorney sent a letter to the appellees' attorney recognizing that Benson was not going to be agreeable to signing the estate settlement agreement. He stated that he had spoken with Ashcraft and that it was their "plan to move forward with the partition action pending in Phelps County District Court unless all parties are willing to settle all matters in a manner consistent with the proposed agreements that accompanied my letter to you and [Benson's counsel] on June 14, 2011."

On August 3, 2011, Ashcraft's attorney sent a fax to the appellees' attorney. The fax offered to sell Ashcraft's undivided one-third interest in the property to the appellees with a release of liability on the estate issues.

Around that time, Benson decided that she was no longer willing to sell her undivided one-third interest in the property to the appellees. On August 9, 2011, the appellees' attorney sent a letter to Cindi stating that he had spoken to Benson's attorney and that Benson's attorney "indicated that [Benson] is not agreeable to the sale of $150,000." At the time of trial, Benson testified that her reasons for backing out of the Purchase Agreement were as follows: the failure of the appellees to obtain financing as outlined in the Purchase Agreement, the failure of everyone to agree on issues related to Josie's estate, the fact that Ashcraft was receiving $185,000 for her interest and was not cooperating on other issues relating to Josie's estate, and her position that she would sell her

interest for $150,000 if Ashcraft and Gary would also take that price for their interests.

The appellees filed their complaint on November 22, 2011. The appellees alleged two causes of action. In the first cause of action, the appellees sought specific performance of the Purchase Agreement for the conveyance of Benson's undivided one-third interest in the property. In the second cause of action, the appellees sought an injunction to enjoin the referee's sale of the property in the partition action.

The appellees were not granted a stay of the referee's sale, and the property was sold by referee's sale for $1,150,000 to unrelated individuals. The district court confirmed the sale by an order filed December 2, 2011. After expenses of the sale, each of the one-third interests was worth $353,937.88. On January 20, 2012, the district court filed an order directing the clerk of the court to hold $203,937.88 of Benson's share in an interest-bearing account until further ordered, and Benson was paid $150,000. Ashcraft and Gary were each paid their one-third interest of the proceeds.

On December 14, 2011, the appellees filed their amended complaint, which alleged the same two causes of action as the original complaint, along with a third cause of action for breach of contract. In the third cause of action, the appellees alleged that Benson breached the Purchase Agreement when she refused to perform the contract. The appellees sought damages constituting the sum of Benson's share of the proceeds from the referee's sale, minus the $150,000 purchase price set forth in the Purchase Agreement. On December 15, the appellees dismissed without prejudice the first and second causes of action in their amended complaint. Accordingly, the only remaining cause of action at trial and on appeal is the claim for breach of contract and resulting damages.

Benson filed her answer on December 30, 2011. In her answer, Benson generally denied the allegations of the amended complaint, and she affirmatively alleged that the Purchase Agreement had expired of its own accord; the appellees had not complied with their obligations under the Purchase Agreement; and her performance was excused, because the appellees had

failed to obtain financing pursuant to the Purchase Agreement in the timeframe set forth therein.

The parties filed cross-motions for summary judgment. The court denied the parties' cross-motions for summary judgment.

A bench trial was held on February 27, 2013. At the trial, the appellees called five witnesses, including Mark, Cindi, both of the Kirbys, and Benson. The appellees offered and the court received 17 exhibits, which included the Purchase Agreement, the promissory note, various communications between the parties' attorneys, the appellees' attorney's deposition, documents from the partition action, Benson's affidavit, answers to requests for admissions, and answers to interrogatories. Benson called one additional witness, the president of the Nebraska State Bank in Oshkosh, Nebraska, and she offered and the court received one multipage exhibit, composed of documents filed by the appellees in connection with their loan application.

On August 2, 2013, the district court filed its order in which it found in favor of the appellees and against Benson. This is the order on appeal. In making its determinations, the court rejected Benson's argument that the appellees were in breach of contract because they did not obtain financing pursuant to the terms of the Purchase Agreement. The court stated that "the financing clause was for the benefit of the [appellees] and was waived by them when they obtained alternate financing" from the Kirbys. The court determined that as of early August 2011, Benson "was in breach of the contract as the [appellees] were ready, willing and able to complete the terms of the contract." The court further determined that

> the reason [Benson] refused to complete the contract was because she was receiving less than what her sister received for a one third interest and she was upset about her sister's handling of her mother's finances. These reasons are extrinsic to the terms of the contract and are not valid reasons for non[-]performance under the contract.

Therefore, the court awarded the appellees the amount of $203,937.88 which had been deposited in the court, representing the amount of Benson's one-third of the proceeds of the

partition sale, i.e., $353,937.88, minus the $150,000 already distributed to Benson per the Purchase Agreement.

For completeness, we note that the Purchase Agreement recognizes that on the date the Purchase Agreement was signed, the appellees had paid a $200 deposit to Benson, receipt for which was acknowledged, and that the remaining balance due was $149,800. Therefore, when the district court ordered the $150,000 be paid to Benson after the partition sale, she received $200 greater than she had bargained for. The appellees have not filed a cross-appeal seeking the $200, and we make no order with respect thereto.

Benson appeals.

## ASSIGNMENTS OF ERROR

Benson claims on appeal that the district court erred when it (1) determined that the appellees could waive the financing clause in the Purchase Agreement, (2) determined that it was not a contractual precondition that the appellees obtain specific financing, (3) determined that Benson had breached the contract, and (4) failed to find repudiation of the contract.

## STANDARDS OF REVIEW

[1] A suit for damages arising from breach of a contract presents an action at law. *Thomas & Thomas Court Reporters v. Switzer*, 283 Neb. 19, 810 N.W.2d 677 (2012).

[2] In a bench trial of an action at law, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014).

[3] The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Braunger Foods v. Sears*, 286 Neb. 29, 834 N.W.2d 779 (2013).

[4] An appellate court independently reviews questions of law decided by a lower court. See *Coffey v. Planet Group*, 287 Neb. 834, 845 N.W.2d 255 (2014).

## ANALYSIS

The essence of the district court's decision is that although the appellees stood ready, willing, and able to perform,

Benson unequivocally and without justification breached the Purchase Agreement, thus entitling the appellees to damages. On appeal, Benson asserts a variety of arguments. We consider Benson's arguments below and determine that none have merit.

*Marketability and Time for Performance.*

Before analyzing Benson's contentions, we consider some preliminary matters relevant to the Purchase Agreement in this case. In this regard, we examine the Purchase Agreement and determine that it is an enforceable contract and that the appellees and Benson were bound by the agreement and extension thereto. It is axiomatic that the title which is the subject of the Purchase Agreement should be marketable. See 14 Richard R. Powell & Michael Allan Wolf, Powell on Real Property § 81.03[6] (2014). We adhere to the modern view that "marketable" and "merchantable" title are practically synonymous and that such title need not be free from every technical defect. See *Holoubek v. Romshek*, 16 Neb. App. 677, 749 N.W.2d 901 (2008).

It is generally understood that the hazard of litigation concerning title is a circumstance rendering a title unmarketable. See, e.g., *Chafetz v. Price*, 385 So. 2d 104, 106 (Fla. App. 1980) (stating that circumstance of present litigation surrounding title "is the paradigm of unmarketability"). However, the marketable title standard can be met if the purchaser specifically agrees to accept the title subject to pending litigation. See 14 Powell & Wolf, *supra*, § 81.03[6][d][iv] (cases collected). In this case, paragraph 2 of the Purchase Agreement states that the appellees as purchasers are "purchasing the property subject to the pending Partition Action" to which, incidentally, they were named defendants. Therefore, the pending litigation does not preclude the transfer of the interest in the real property involved in the Purchase Agreement.

We also note that the property at issue is an undivided one-third interest rather than the entirety of the described real property. The transfer of undivided interests in real property has not met with disapproval. See, e.g., *Klapka v. Shrauger*, 135 Neb.

354, 281 N.W. 612 (1938). Benson's interest is the proper subject of a real estate contract.

We next observe that the Purchase Agreement initially set a closing date of May 1, 2011, but was extended to March 1, 2012, by agreement of the appellees and Benson. We have stated that a real estate contract which provides for a specific closing date requires closing within a reasonable time after that date unless the contract provides that time is of the essence. See *Pettit v. Paxton*, 255 Neb. 279, 583 N.W.2d 604 (1998). The Purchase Agreement did not literally provide that "time was of the essence." The closing as extended was set "on or before" March 1, 2012. The parties knew of the pending partition action and testified they were aware that the performance of the Purchase Agreement depended on Benson having title. As a treatise aptly states: "Seller cannot convey title that has been lost." 14 Powell & Wolf, *supra*, § 81.03[6][d][iv] at 81-140. Thus, performance would not be feasible after a certain date but before March 1, 2012, if Benson's interest was conveyed to an unrelated purchaser in the partition action. Therefore, time, while not of the essence, was relevant to the successful performance of the Purchase Agreement.

*Breach of Contract.*

Benson contends she did not breach the Purchase Agreement. She initially makes numerous arguments related to the 30-day provision by which the appellees were to apply for a FSA loan and the 90-day provision by which such financing was to be secured. Benson contends that because these deadlines were not met according to these terms, the Purchase Agreement became null and void. Benson claims the district court erred when it concluded that these conditions were for the benefit of the appellees as purchasers and further erred when it found that the conditions were waived by the appellees when they obtained alternate financing within the timeframe provided. We find no merit to Benson's claims of error.

[5] We have held that a party to a contract may waive the provisions made for his or her benefit. *Gesell v. Reeves*, 229 Neb. 842, 429 N.W.2d 363 (1988). It has been observed that

"[r]eal estate sales contracts often contain a mortgage or financing contingency clause, usually for the benefit and protection of the purchaser in the event that the purchaser is unable to secure necessary financing by the date set for closing." 60 Am. Jur. Proof of Facts 3d 445 *Waiver of Strict Compliance* § 17 at 496 (2001 & Supp. 2013). That is, such "contingencies . . . are ordinarily for the benefit of the purchaser." *Id*. at 496-97. See, also, *Wesley N. Taylor Co. v. Russell*, 194 Cal. App. 2d 816, 15 Cal. Rptr. 357 (1961) (cases collected).

Whether the condition is for the benefit of the purchaser, or the seller, or both, depends on the facts and circumstances of each case and the language of the agreement. *Fleischer v. McCarver*, 691 S.W.2d 930 (Mo. App. 1985) (cases collected). In cases where it is determined that the inclusion of a financing provision is for the sole benefit of the purchaser, the cases also state that the seller's "interest is in securing the purchase price [and] that the paramount obligation of the respective parties is the payment of the cash and the delivery of title to the property, and that the method of financing is incidental and not of the essence of the contract to convey." See *Wesley N. Taylor Co. v. Russell*, 194 Cal. App. 2d at 828-29, 15 Cal. Rptr. at 365 (cases collected). We agree with the foregoing analysis and find it applicable to the case at bar.

In its order, the district court determined that the financing conditions were for the benefit of the appellees as purchasers and found the facts showed that Benson, as seller, was "not concerned about where the money came from as much as she was concerned about other extrinsic matters." These matters included the higher price her sister, Ashcraft, might receive for her one-third interest and the ongoing dispute relating to their mother's estate. The district court found that Benson "conceded that prior to making the decision not to close, she never questioned the [appellees] about the status of their financing." The district court determined that under the facts and language of the Purchase Agreement, the financing terms were for the appellees' benefit and that the appellees could and did waive the terms. The district court determined that the Purchase Agreement was an enforceable contract and

that the waiver did not render the Purchase Agreement null and void.

Having reviewed the law and record, we conclude that the district court's recitation of the law to the effect that the appellees as purchasers could waive a condition for their benefit was correct and that its findings of fact were not clearly erroneous. We also observe that by agreeing to extend the closing date to March 1, 2012, Benson exhibited her willingness to waive the earlier financing deadlines, and that such fact lends further support to the district court's determination that lack of adherence to the FSA financing provisions was not fatal.

Benson next contends that the district court erred when it failed to make an explicit finding that Benson repudiated the Purchase Agreement and further erred when it determined that Benson breached the Purchase Agreement. We find no merit to these assignments of error.

[6,7] We have stated that "'[i]n order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform.'" *Anderson Excavating v. SID No. 177*, 265 Neb. 61, 68, 654 N.W.2d 376, 382 (2002), quoting Restatement (Second) of Contracts § 250, comment *b*. (1981). The question whether there has been repudiation or whether repudiation was justified is a question of fact. *Id*.

The district court reviewed the evidence and found that prior to the partition sale when performance of the Purchase Agreement was still viable, "Benson communicated through her attorney on or about August 8, 2011, that she would not go through with the sale. (Exhibit 24) She testified at trial that she decided to go the partition route, because on August 8, 2011 'she was pissed that day.'" Exhibit 24 is an August 9, 2011, letter to Cindi from her attorney stating in part that the attorney had spoken to Benson's attorney on August 8, the latter of whom "indicated that [Benson] is not agreeable to the sale of $150,000" and indicating that the appellees should not talk directly to Benson "as it just upsets her to discuss all this." The district court found that at about this point in time, "Benson decided she was no longer willing to sell her one third interest to the [appellees]."

Although the district court did not use the word "repudiation" to characterize these facts, the substance of its order amounts to a finding of an unequivocal statement by Benson that she would not perform, and therefore, the district court effectively found a repudiation by Benson. No further findings are necessary.

Benson next contends that the appellees were not capable of purchasing the real estate and that as a consequence, she did not breach the Purchase Agreement. We understand Benson's arguments to generally include the suggestion that the appellees failed to tender a performance and specifically to challenge the district court's determinations in its August 2, 2013, order that Benson "was in breach of the contract as the [appellees] were ready, willing and able to complete the terms of the contract." We find no merit to Benson's assignments of error.

As we have noted, Benson repudiated the contract in August 2011, which was during the extended lifetime of the Purchase Agreement and before the November 2011 partition sale. The repudiation occurred during a period when the obligations of the Purchase Agreement could have been performed. We have summarized the legal consequences of such a state of affairs as follows:

> Where one party to an executory contract to sell and convey real estate, prior to breach by him and before time for performance by either party has arrived, unequivocally states that he cannot and will not perform, when the time of performance arrives, the other party may either treat such renunciation as an abandonment or breach of contract by affirmative election so to do, or he may treat such renunciation as inoperative, and await the time of performance and then hold the one party responsible for all consequences of nonperformance, including specific performance in a proper case, but in case he keeps the contract alive, it lives for the benefit of both parties, and he remains subject to all of his obligations under it, and enables the one party to complete the contract, notwithstanding his previous renunciation, with the same force and effect as if such prior renunciation had never

been made. Frost v. Knight, L. R. 7 Exch. 111; Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953; 13 C. J., Contracts, § 729, p. 655.

*Lang v. Todd*, 148 Neb. 726, 732, 28 N.W.2d 434, 437-38 (1947).

[8] The record shows that Benson did not withdraw her repudiation, and the appellees accepted her repudiation as evidenced by their filing the instant action. As to a tender by the appellees, we have previously considered the relevance of tender in a case where a party unequivocally stated it would not perform. We stated: "An unqualified renunciation of an executory contract before time for performance by one party excuses tender of performance by the other party at the time set for performance." *Friehe Farms, Inc. v. Haberman*, 191 Neb. 292, 299, 214 N.W.2d 916, 920 (1974). Similarly, in *Esplendido Apartments v. Olsson*, 144 Ariz. 355, 361, 697 P.2d 1105, 1111 (Ariz. App. 1984), it was observed that other courts have recognized that a buyer is relieved "of the obligation to tender performance where the seller has either refused to perform or is clearly unable to do so."

At trial, referring to the Kirby note, Cindi testified that she repeatedly advised Benson "we were ready to go with it" and that she told Benson "[w]e had our financing lined up, and it was just a matter of when we wanted to do it." Cindi also testified that she said nothing that could be construed as wanting to back out of purchasing Benson's one-third interest. The district court credited this testimony as it was entitled to do. See *Liljestrand v. Dell Enters.*, 287 Neb. 242, 249, 842 N.W.2d 575, 580 (2014) (stating that "in a bench trial of an action at law, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony").

The district court heard the witnesses and reviewed the documentary evidence and determined that the note between the Kirbys and the appellees was valid, that the Kirbys had the $150,000 referred to in the note on hand, and that the appellees "had the financing in place." The district court determined that the appellees "were ready, willing and able to complete the terms of the contract." Benson suggests that, even if ready, willing, and able, the appellees were nevertheless required

to tender the balance of the amount due under the Purchase Agreement in order to put her in default and to recover damages for breach of the contract. Because the law regarding tender is not so rigid, we reject Benson's suggestion.

[9] In *Klapka v. Shrauger*, 135 Neb. 354, 361, 281 N.W. 612, 616 (1938), we observed:

> "A covenant by a purchaser to pay, and by the vendor to convey a good title, both to be performed at the same time, are mutually dependent, and neither party can claim a breach without a tender of performance and offer to perform upon due performance by the other, or, *at least, proof of readiness and willingness to perform*." *Nicolopoolos v. Hill*, 59 A. L. R. 185 (217 Ala. 589, 117 So. 185 [1928]).

(Emphasis supplied.)

As we indicated in *Klapka*, a complete tender of performance is not always indicated, and in some cases "'proof of readiness and willingness to perform'" is all that is required. *Klapka*, 135 Neb. at 361, 281 N.W. at 616. Other courts are in agreement. When faced with facts somewhat similar to the instant case, the Supreme Court of Arizona in *Kammert Bros. Enter., Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 306, 428 P.2d 678, 683 (1967), stated:

> We must next consider whether the buyer was required to make a formal tender of the amounts due on the contract in order to recover damages for breach of the contract. Kammert Brothers [as seller] here had positively refused Tanque Verde's offer to perform its duties under the contract. Therefore tender of the purchase price by the buyer was excused, since an actual tender is unnecessary where it is clear that the other party will not accept it, rendering the act useless. Lee v. Nichols, 81 Ariz. 106, 301 P.2d 1022 (1956); Schmitt v. Sapp, 71 Ariz. 48, 223 P.2d 403 (1950). It was sufficient that the buyer was ready, willing, and offered to perform. Lee v. Nichols, supra. It was clearly established that such was the case here.

We agree with the reasoning in *Kammert Bros. Enter., Inc.*, and we apply it to this case. The district court found that

the appellees had financing in place and had expressed their ability and willingness to perform under the contract. In the face of Benson's repudiation, the appellees were not required to tender the money due under the Purchase Agreement. Such would have been a useless act. The district court determined that the appellees' efforts were sufficient and that thus, Benson was in breach at the time for performance. Based on the applicable law and the district court's findings, which are supported by the record, we see no error. We find no merit to Benson's assignments of error regarding repudiation and breach of contract.

## CONCLUSION

The district court determined that Benson breached the Purchase Agreement by refusing to sell her interest in the property at issue and awarded damages to the appellees. For the reasons explained above, we find no merit to Benson's assignments of error and, accordingly, affirm.

AFFIRMED.