385 So.2d 104 (1980)
Gertrude CHAFETZ and H. Benjamin Chafetz, Appellants,
v.
Samuel PRICE, Appellee.
No. 79-1537.
District Court of Appeal of Florida, Third District.
June 10, 1980.
Rehearing Denied July 11, 1980.
*105 I. Roger Feldman, Miami Beach, for appellants.
Ira B. Price, Miami, for appellee.
Before HENDRY and BASKIN, JJ., and EZELL, BOYCE F., Jr., (Ret.), Associate Judge.
HENDRY, Judge.
Appeal to this court was made by the defendants below from a final order commanding their specific performance, as sellers of a Miami Beach condominium, of a land sale contract entered into between the parties two and one-half years ago.
In December, 1977, the appellants and appellee, in Miami and Jacksonville, respectively, signed separate copies of a counterpart purchase and sale agreement for the transfer, by warranty deed, of good and marketable title to the subject property. The closing, originally scheduled for February 1, was delayed by notice of lis pendens, filed in January, 1978, by a third party, one Tenenbaum, pursuant to her suit for specific performance of an alleged preexisting contract for sale of the same condominium.
The appellee agreed to defer closing, so that the appellants could effect a resolution of the Tenenbaum lawsuit, which constituted a cloud on appellants' title.
A summary judgment was obtained against Tenenbaum on May 16, 1978, from which appeal was taken to this court. That appeal, however, was dismissed sua sponte, on the ground that an order granting motion for summary judgment is neither final nor an appealable interlocutory order. Art. V. § 4(b)(1), Fla. Const.; Fla.R.App.P. 9.130(a)(3); Shupack v. Allstate Insurance Co., 356 So.2d 1298 (Fla.3d DCA 1978).
In February, 1979, a voluntary dismissal with prejudice, and a proposed order upon stipulation, were negotiated at some expense to appellants, and the appellee was informed in early March that closing would take place as rescheduled for April 16, 1979.
The meeting of april 16 did not culminate in a closing. Appellants contend that they were ready to close, but that appellee was not prepared; appellee contends that even if he was not prepared to close at that time, he was legally excused, because appellants were not able to convey marketable title, as required by their December 1977 contract.
On May 2, 1979, appellants submitted their Proposed Order Upon Stipulation to the circuit court for its adjudication, and a closing was arranged for May 31, 1979. On that date, appellee was ready, willing and able to close; appellants did not make an appearance.
Appellants claim that title to their condominium was marketable from February, *106 1979, the date of settlement of the Tenenbaum suit. It is their position that, title being marketable on April 16, appellee's failure to close on that date constituted a breach of their contract, and excused appellants' later nonperformance.
The initial question we face is whether the pendency of the Tenenbaum litigation rendered the appellants' title unmarketable. We affirm the trial court's finding of unmarketability.
[Where] a vendor of real property expressly ... agrees to convey a good title or marketable title, that undertaking is discharged only by the conveyance of a title unencumbered and free from reasonable doubt as to any questions of law or fact necessary to sustain its validity.
Wheeler v. Sullivan, 90 Fla. 711, 106 So. 876, 878 (Fla. 1925), quoted in Walker v. Close, 98 Fla. 1103, 125 So. 521, 524 (Fla. 1929); Peters v. Speilvogel, 163 So.2d 59, 61 (Fla. 3d DCA 1964).
[Marketable title] means not merely a title valid in fact but a title that must be such as to make it reasonably certain that it will not be called in question in the future so as to subject the purchaser to the hazard of litigation... . It must be, as is sometimes said, a title which can be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence, and which is not subject to such a doubt or cloud as will affect its market value.
Adams v. Whittle, 101 Fla. 705, 135 So. 152, 155 (Fla. 1931) (citation omitted); Model Land Co. v. Crawford, 155 Fla. 323, 20 So.2d 122, 124 (Fla. 1944).
Because appellants did not obtain a final order granting summary judgment, the Tenenbaum suit was still pending at the time of the April 16 closing. Had appellee purchased the title interest of the appellants on April 16, he would have faced more than the "hazard of litigation"; he would have purchased title encumbered by a present adverse claim. Such a circumstance is the paradigm of unmarketability.
Having foregone final decision in the circuit court, appellants sought a compromise and settlement with Tenenbaum. It is their position that title to the subject property became marketable when the agreement was reached; appellee contends that the cloud upon title lifted when agreement culminated in the dismissal with prejudice of May 2, 1979.
On these facts, we agree with the court below that title was rendered marketable by the order of dismissal. We note that appellee's knowledge of the settlement of the Tenenbaum claim was limited, until the order of dismissal was issued, to appellants' claims that agreement had been reached, and that title was now clear. More importantly, we note that, until May 2, 1979, the title abstract and court records indicated a claim against title, without suggestion that that claim had been withdrawn; we note finally the inability of the appellee, because of appellants' failure to provide him with a certified copy of the signed agreement of February 16, 1979, to clear the record.[1]
In noting these facts, we keep in mind the distinction between marketable title and record title. DeHuy v. Osborne, 96 Fla. 435, 118 So. 161, 163 (Fla. 1928). However, because appellants' private settlement of the Tenenbaum claim left appellee with proof neither of clear title in appellants, nor of a chain of title to himself (for future purchasers or against future claimants), we hold that appellants' April 16 tender was of less that marketable title.
Appellants contend that the trial court erred in granting specific performance, rather than damages, to appellee. They point first to the maxim that specific performance of an indefinite contract will not be commanded. However, the trial court *107 found, and we agree, that the terms of the contract were definite and certain.
They argue further that failure of the appellee to close on April 16 precludes his demand for specific performance, because a precondition to equitable remedy is performance of one's own obligation, or at least a "present readiness, willingness, and ability in good faith to perform the acts required of one... ." Martin v. Albee, 93 Fla. 941, 113 So. 415, 416 (Fla. 1927); Michigan Avenue, Inc. v. Cambridge Hotel, Inc., 183 So.2d 725, 727 (Fla. 3d DCA 1966). Appellants point in that regard to appellee's failure to tender either the cash or documents required for closing on April 16, 1979.
We find that argument unpersuasive. First, the trial court found, and we have agreed, supra, that title to the subject property did not become marketable until May 2. After the Tenenbaum litigation was dismissed with prejudice on that date, closing was reset for May 31, at which time appellee tendered complete performance of the December 1977 terms.
Finally, we note that the May 31 tender of performance was not essential to appellee's demand for equitable remedy. Tender of performance at the April 16 closing would have been useless; equity does not demand the doing of a useless act. Appellants are estopped, by their own lack of readiness or willingness, from defending in equity on the basis of appellee's nascent failure to perform. Tate v. Pensacola, Gulf, Land & Development Co., 37 Fla. 439, 20 So. 542, 545 (Fla. 1896); Wilson v. Odom, 215 So.2d 37, 39 (Fla. 1st DCA 1968).
We have considered all the issues presented on appeal and have concluded that no reversible error has been demonstrated; therefore the judgment appealed is affirmed.
Affirmed.
NOTES
[1] We do not rely upon the pendency of the notice of lis pendens in the abstract of title; it should have been removed by the clerk's office pursuant to the court's May 16, 1978 direction to do so, contained in its Order Granting Defendants' Motion for Summary Judgment. In any event, the effectiveness of that notice statutorily expired one year after it was filed and before the April 16 closing date. § 48.23(2), Fla. Stat. (1979).