COBB, Judge.
This is an appeal from a summary judgment granting specific performance on a contract to convey real property in Brevard County, Florida. The plaintiffs below, Cyrus L. Luley and Wayne J. Tidwell d/b/a Leaseco Investments (hereinafter Leaseco), entered into a contract with Gary Brinson, as Trustee (hereinafter Brinson), whereby the latter agreed to purchase from Leaseco certain real property, with a closing date scheduled for August 1, 1981. Thereafter, the parties entered into another agreement acknowledging that a third party, First Interstate Development Corp., had filed a civil action claiming that it owned approximately two acres of the property which Leaseco was to convey to Brinson. Lease-co and Brinson agreed to proceed with the closing on all but the disputed portion of the property, and Leaseco agreed to defend the civil action and to notify Brinson of its progress.
The parties then entered into another contract for purchase and sale of the disputed two acres and executed an addendum thereto wherein Brinson agreed that First Interstate’s claim did not constitute a title defect and that the sale and closing would take place on August 1, 1981, in spite of the existence of the action. The parties subsequently modified the addendum by an agreement dated June 16, 1981, containing the following provision, referred' to as Paragraph 4, which is the subject matter of this suit:
Buyer acknowledges having received notice of the filing of the civil action wherein First Interstate Development Corporation is Plaintiff and the Sellers, together with the Barbe J Corp., are Defendants, said civil action being identified by no. 81-5589-CA-B, in the Circuit Court of Brevard County, Florida, wherein claim is made by said Plaintiff that Plaintiff is the owner of all of the property which is the subject matter of this contract. Buyer and Sellers agree that the sale and closing of this contract shall not take place until the ownership of the subject property is resolved through successful termination of said suit, or settlement thereof, and in the event that it is determined in said action that the Plaintiff owns the subject property, the $15,-000.00 deposit remaining with Sellers’ attorney shall be returned to the Buyer, in lieu of any other remedies, and the parties obligations hereunder shall be null and void. In the event that successful termination is obtained, evidence of same shall be delivered to the Buyer, and the Buyer agrees to close this transaction within thirty days of receipt of notice of the successful termination thereof. Provided, however, that in the event said civil action is not terminated and the title to the subject property resolved on or before August 1, 1982, then in that event, the Buyer, at Buyer’s sole option, may elect to terminate its obligations to *585 perform this contract, thereby entitling it to a refund of $15,000.00 of the deposit monies referred to in Paragraph 11(a).
On July 30, 1982, First Interstate and Leaseco entered into a settlement stipulation. The stipulation was filed with the circuit court on July 30, 1982, and Lease-co’s attorney notified Brinson by letter of the written stipulation, which notification Brinson received on July 30, 1982. The pertinent provisions of the stipulation are as follows:
6. Plaintiffs shall provide a quit claim deed and/or other documents as may be required by Gary E. Brinson to properly clear any interest which they may have in the disputed strip of land. Said document or documents shall be held by Gary E. Brinson, subject to an escrow delivery, until closing of the contract. On closing, Gary E. Brinson shall have full authority to record the document or documents so delivered in order to clear plaintiffs’ interest to the disputed strip of land, if any, of record.
7. Immediately on closing, the sum of Twenty Thousand One and No-100 ($20,-001.00) Dollars shall be paid over to John M. Starling, attorney for plaintiff, ... as full consideration for relinquishment by plaintiff of any interest which it may have had in the disputed property.
8. On closing and delivery of the documents and funds as above provided, the parties shall cause an appropriate stipulation of dismissal with prejudice to be filed with the court with a request that an order of dismissal be entered.
On August 18, 1982, Brinson notified Leaseco by letter that his clients felt Lease-co had failed to fulfill the requirements set forth in Paragraph 4 of the contract, and therefore demanded that Leaseco refund the $15,000.00 deposit. On August 26, 1982, Leaseco filed a complaint against Brinson, seeking specific performance of the contract, and Brinson filed a counterclaim seeking a return of the deposit.
Brinson’s position below, and on appeal, was that he was not obligated to go through with the sale because there was no formal dismissal of the suit on or before August 1, 1982. It is clear that as of that date the action between First Interstate and Leaseco had not been formally dismissed because Leaseco had not been paid the $20,001.00 pursuant to the settlement stipulation. Leaseco’s position was that it had satisfied the conditions of Paragraph 4 by reason of the settlement stipulation communicated to Brinson prior to August 1, 1982, and that marketable title would have been conveyed to Brinson pursuant to that agreement at the time of closing. Both parties moved for summary judgment, and agreed at both trial and appellate levels that there was no genuine issue as to any material fact, and no further evidence necessary for a determination by the trial court. See Sanders v. Wausau Underwriters Ins. Co., 392 So.2d 343 (Fla. 5th DCA 1981).
The trial court entered judgment for the plaintiff, Leaseco, granting specific performance conditioned upon Leaseco’s ability to tender marketable title at closing. The judgment further provided for a closing date on or before thirty days from the judgment as agreed upon by the parties, at which time Leaseco was to deliver a warranty deed for the property, conveying a clear and marketable title. The relevant findings by the trial court in its judgment were as follows:
1. Both Luley and Brinson agree that no genuine issue of any material fact exists in this cause and that the matter is now ripe for final judgment determination.
2. Both Luley and Brinson have each moved for Summary Judgment in their favor based on differing legal conclusions and inferences to be drawn from the undisputed facts.
3. The matters presented to the Court to construe the subject agreements of the parties as a matter of law applied to the undisputed facts.
4. Luley and Brinson entered into a purchase and sale contract as to the subject two acres of property clouded by Interstate’s claim. The parties intended *586 that Interstate’s claim to the two acres would be determined by one of two ways, namely, by judgment or settlement.
5. Within the time allowed by the Lu-ley-Brinson contract for the two acres, Luley achieved an executory settlement agreement with Interstate with the express provision that Luley would obtain from Interstate all instruments required by Brinson to render Interstate’s claim a nullity at closing.
6. The basic contract as to the two acres between Luley and Brinson provides on the reverse side in paragraphs K. and R. that instruments may be presented at closing necessary to correct outstanding defects in the title and render the same marketable; and even the escrow closing provisions of paragraph R. contemplate correcting the clearing title defects up to 30 days following the date of closing.
7. Luley could have rendered title marketable at closing pursuant to. the executory settlement agreement Luley had with Interstate.
The basic issue on appeal is whether or not Paragraph 4 of the Addendum to Contract for Sale and Purchase, which was drafted by Brinson,[1] requires that marketable title be clear in Leaseco as of August 1, 1982. While the provision states “title to the subject property” is to be resolved by August 1, 1982, the contract does not in express terms require marketable title by that date. There is also the question of whether or not the written settlement of the action on July 30, 1982, complies with the contractual requirement that the action be “terminated” on or before August 1, 1982. The terms in the contract, such as “resolved” and “terminated,” are not specifically defined, and are subject to different constructions, as is obviously indicated by the opposing arguments in this case.
We further note that Paragraph K of the sale contract allows the sellers to present documents at closing which render title marketable. Thus, unless Paragraph 4 altered this provision by requiring marketability by August 1, 1982, the contract permitted Leaseco to cure the defect at closing which, under Paragraph 4, was to occur within thirty days after seller gave notice to buyer of the termination of the suit with First Interstate.
On appeal, Brinson relies heavily on the case of Chafetz v. Price, 385 So.2d 104 (Fla. 3d DCA 1980). In Chafetz, however, a standard form purchase and sale contract was entered into prior to the third party’s claim, whereas in the instant case Leaseco and Brinson knew of the claim by First Interstate and included a special addendum to deal with the problem. In Chafetz it was clear that at the time of a specific closing date, agreed upon by contract, the sellers could not produce marketable title. Therefore, the buyer was excused for his nonperformance at that time. At a later date, after title had been rendered marketable, the sellers themselves in Chafetz reneged on the contract. Moreover, in Chaf-etz the buyer was not provided with any settlement agreement prior to the scheduled date of closing, as was the situation in the instant case. In the instant case, a thirty-day period was contractually provided following the settlement and notice thereof, during which the seller could obtain documents satisfactory to the buyer to clear the third party’s claim, and the parties were to agree on a mutually convenient time for closing.
In Chafetz the issue turned on whether a land title was marketable on a specific date when closing was scheduled. In the instant case it is clear that marketability of title on August 1, 1982, was not required by the contract, the only requirements on that date being settlement and notice. Not only was notice given in the instant case, but the settlement stipulation was recorded.
*587 The trial court found, and properly so, that the seller could have rendered title marketable at closing pursuant to the exec-utory settlement agreement, noting that Paragraph K of the contract between the parties provides, in part, that the seller shall furnish at closing any corrective instruments that may be required in connection with perfecting the title. The buyer’s argument that there was a possibility that the third party, First Interstate, would not provide corrective instruments at closing was anticipated by the trial court in its summary final judgment by conditioning its order for specific performance on Lease-co’s ability to tender marketable title at that time. All of the facts before the trial court indicated that the seller was, in fact, in a position to convey marketable title on and after August 1, 1982, and would have done so but for the default by the buyer, who refused to agree upon a closing date as required by the contract.
For the foregoing reasons, the judgment of the trial court is
AFFIRMED.
ORFINGER, C.J., and CYCMANICK, M.F., Associate Judge, concur.

. It is fundamental that doubtful language in a contract should be interpreted most strongly against the party who has selected that language, especially where he seeks to use such language to defeat the contract or its operation. 11 Fla.Jur.2d Contracts § 106.