WOODARD, Judge.
The defendant, Jeremy Brown, was indicted on January 15, 1992, for the crimes of obstruction of justice, simple arson, and second degree murder committed on August 28, 1990. The victim was the defendant’s father, Lee Earl Brown. The defendant waived his right to trial by jury, and the state later dismissed the obstruction of justice charge. After a three day bench trial, the defendant was found guilty of simple arson and manslaughter. A presentence investigation report was prepared and the defendant was sentenced to ten (10) years at hard labor for simple arson, and eighteen (18) years at hard labor for manslaughter, with the sentences to run concurrently and with credit for the time the defendant had already served in jail.

FACTS

The Oakdale Fire Department was called at 2:01 a.m. on August 28, 1990 to a house fire at 214 Ash Street. They discovered the body of Lee Earl Brown lying face down in his bed. When debris was removed from his body, the police discovered a bullet hole in his back. Doug Marshall, an investigator with the State Fire Marshall, noticed there were burn patterns on the linoleum floors which indicated that an accelerant was poured throughout the house and up to the back porch. The most burn damage was near the back porch which indicated it was the fire’s starting point, and the amount of water and time needed to extinguish the fire was not consistent with an accidental fire. Also, glass was blown out of the windows, indicating an explosion caused by the fumes of an accelerant.
The investigation eventually turned to the defendant, Jeremy Brown, who also lived at 214 Ash Street and was the son of Lee Earl Brown. Gracie Johnson and Mervyn Johnson were neighbors of the defendant and his father. They saw the defendant shortly before and after the fire. Mervyn Johnson testified he saw the defendant running from the front of Brown’s house to behind the tin shed next door, shortly after the fire began. The area behind the tin shed was wooded.
After the fire, police found a gasoline can and a shovel in a creek in the woods. These *536 items were identified as the ones from the back of Lee Earl Brown’s work truck.
Gracie Johnson testified she saw the defendant come and go the night of August 27, 1990. At approximately 10:00 p.m., she saw the defendant and Lee Earl Brown on the porch of their house, arguing, and she then saw Lee Earl Brown draw up his hand as if to strike his son. The defendant left in his father’s work truck and returned at 11:15 p.m. Gracie Johnson did not see the fire start, but when her husband did, he called for her to notify the fire department. After she called the fire department, Gracie Johnson went outside and saw the defendant coming from behind the tin shed hollering “where’s my damn daddy?” The defendant was seen throwing some rocks at the tin shed and then he ran for the woods. The defendant was also seen at the fire by Fire Chief Thomas Moore, and his sister and uncle.
The police later learned that the victim, Lee Earl Brown, had been paid on August 27, 1990, and had approximately $1,500.00 cash with him. Joseph Latigue testified that the defendant called him at 11:00 p.m. and said he had $40.00 to “get him something.” Mr. Latigue and the defendant went to get something and came back. Mr. Latigue denied that the “something” was cocaine. Mr. Latigue said the defendant called again at approximately 12:00 midnight, and said he had $400 to “get him something.” When asked where he got the cash, the defendant claimed that he got the large sum of money from a cousin from Shreveport. Mr. Latigue told the defendant that he would not help him, and then he asked to speak with Lee Earl Brown. Mr. Latigue worked for Lee Earl Brown and he wanted to inquire if they would be working the following day. The defendant put the phone down and after Mr. Latigue waited ten to fifteen minutes without Lee Earl Brown coming to answer the phone, he hung up. Mr. Latigue testified that he had called the defendant’s home on August 27th, before 11:00 p.m., but no one answered the phone. He also testified that he was with the defendant at Mr. Latigue’s brother-in-law’s home until dark on the night of the shooting and fire.
The defendant was next seen at Food Et-cetera by Johnny Buxton who was standing across the street and saw the defendant driving his father’s work truck. Mr. Buxton, a life-long acquaintance of the defendant, testified he saw the defendant putting gasoline in a gas can. Shirley Fontenot and Veronica Serell were working inside Food Etcetera and said the defendant asked if they sold matches or a fighter. When they told him they had none for sale, he then purchased the gasoline. This occurred shortly before 2:00 a.m.
After the fire started, many of the neighbors and family of the defendant and Lee Earl Brown came to the scene. Gary Durbin arrived and noticed that the gas can and plastic gas “jugs” were missing from Lee Earl Brown’s truck.
The defendant was questioned by the police around noon on August 28, 1990, and he waived his rights and gave a statement. The defendant told the police he last drove his father’s truck just before dark when he and Randy Brown went to the store. Defendant then said he walked to the Shallow Hole, a recreational area on the Calcasieu River, and consumed Twelve “Tall Boys” of beer until he was drunk. Defendant further claimed he was able to walk home, through the woods and in the dark, arriving to find his house on fire.
Detective Bobbie Smith testified that after the defendant was arrested, his clothes were seized and he could smell gasoline on the defendant’s clothes. Defendant was brought in for questioning a few hours after the fire occurred. However, the crime lab which later analyzed the defendant’s clothing could not find a detectable amount of gasoline. Deputy Grant Willis went to Shallow Hole after the defendant gave his statement and found no empty “Tall Boy” beer cans.
Dr. George McCormick, II performed the autopsy on Lee Earl Brown. Dr. McCormick testified that Lee Earl Brown was shot in the back with a shotgun and the muzzle had been held in contact with the victim’s skin. The right lung and heart were hit by the shotgun blast and Lee Earl Brown died of the massive hemorrhage resulting from the shotgun blast. The type of burns seen *537 on the body of Lee Earl Brown indicated that Mr. Brown was dead before the fire began.
The trial court found the defendant guilty of simple arson as set forth in La.R.S. 14:52. Concerning the murder charge, the trial court found the defendant guilty of the lesser included offense of manslaughter. The court believed that the killing was done in the heat of passion sufficient to deprive an average person of self control.

ERRORS PATENT

La.Code Crim.P. art. 930.8 provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.Code Crim.P. art 921. The three year prescriptive period does not begin to run until the judgment is final under La.Code Crim.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, the district court is directed to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Reeves, 613 So.2d 1061 (La.App. 3d Cir.1993), writ denied, 619 So.2d 543 (La. 1993).

ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE

These assignments concern the sufficiency of the evidence to convict the defendant.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
A determination of the weight of evidence presented is a question of fact. The resolution of matter where conflicting testimony exists requires a determination of credibility of the witness and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31,102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3d Cir.1987), writ denied, 507 So.2d 226 (La.1987).
A fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, at 319, 99 S.Ct. 2781, at 2789, 61 L.Ed.2d 560, at 573-574 (1979). Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305, at 1310 (La.1988).
The trial court found that the circumstantial evidence presented at trial was sufficient to establish the defendant was guilty of manslaughter.
La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
*538 Incorporating this rule under the Jackson standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 448 So.2d 585 (La.1983); State v. Morns, 414 So.2d 320 (La.1982).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). See also State v. Chism, 436 So.2d 464 (La. 1983).
Turning first to the crime of simple arson, it is defined by La.R.S. 14:52 as the intentional damaging by any explosive substance or the setting fire to any property of another, without the consent of the owner. The defendant argues that the state failed to present any evidence that the house fire was set without the consent of the owner, who was Johnny Brown, the defendant’s brother. The state relied upon State v. Lastrapes, 443 So.2d 652 (La.App. 3d Cir.1983), which provided that the lack of consent to arson may be inferred circumstantially from the evidence presented. Id. at p. 656, citing State v. Perry, 408 So.2d 1358 (La.1982).
The evidence of an accelerant being poured onto the house’s floor, the defendant being seen shortly before the fire purchasing one dollar’s worth of gasoline and putting it in a gas can, the defendant’s attempt to purchase matches and a lighter, plus the defendant’s flight immediately after the fire started and the seizure of his clothes smelling of gasoline were sufficient to establish the defendant’s quilt of simple arson. The defendant attempted to argue that another person may have set the fire and killed the defendant’s father, yet the neighbors saw only the defendant going to and from the Brown residence. This evidence is sufficient to find the defendant guilty of simple arson, as it excludes every reasonable hypothesis of innocence.
Turning to the manslaughter conviction, manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La.R.S. 14:31(1); State v. Nugent, 580 So.2d 1002, 1004 (La.App. 3d Cir.1991), writ denied, 586 So.2d 539 (1991). The presence of sudden passion or heat of blood distinguishes manslaughter from murder; yet, these are not elements of the offense of manslaughter, but are mitigating factors in the nature of a defense. A defendant who establishes by a preponderance of the evidence that he acted in sudden passion or heat of blood is entitled to a manslaughter verdict.
The evidence that the defendant killed his father is also circumstantial. The autopsy performed on Lee Earl Brown established that he died from the gunshot wound before the fire was set. The victim’s mother had given Lee Earl Brown nearly $1,500.00 in cash to pay his employees and other debts. Not all of the money was spent on August 27, 1990, because the employees were paid but not certain suppliers. The defendant was seen arguing with his father around 10:00 p.m. The defendant left and Joe Latigue saw the defendant at 11:00 p.m. when the defendant asked him to get forty dollars worth of “something.” Gracie Johnson saw the defendant return home at 11:15 p.m. The defendant later called Joe Latigue at midnight, when he suddenly had four hundred dollars to “get him something,” yet the defendant did not give a plausible explanation of how he got the cash. When Joe Latigue asked to speak to Lee Earl Brown, the defendant simply put the phone down and Mr. Latigue hung up after no one answered it for ten to fifteen minutes.
Other witnesses saw the defendant out and about Oakdale at the time the defendant claimed he was at Shallow Hole. Shortly before the fire, the defendant purchased gasoline and put it in a gasoline can. The defendant attempted to purchase matches or a lighter. The gasoline can and plastic jugs, used in logging operations and usually kept on the truck, were missing after the fire. *539 The gasoline can and a shovel were later found in a creek near the house. The defendant gave an alibi during his recorded statement to the police the day of the fire. This alibi was not corroborated but rather was contradicted by the evidence presented at trial. The defendant was seen coming and going from the house, yet no one else saw Lee Earl Brown after 10:00 p.m. when he argued with the defendant on the porch of the house.
The circumstantial evidence presented at trial refutes any reasonable hypotheses that some one else killed Lee Earl Brown.
The trial judge stated that the defendant killed his father in sudden passion and heat of blood. The evidence of provocation was provided by Gracie Johnson’s testimony that she saw the victim, Lee Earl Brown, try to hit the defendant while they argued on the porch.
The evidence of the defendant’s guilt of manslaughter is sufficient; therefore, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, defendant claims the trial court erred in allowing the state to mention his failure to provide an alibi witness of which he had given notice.
Before trial, the defendant gave notice of his intent to present an alibi defense, pursuant to Code Crim.P. art. 727. At trial, the defendant did not withdraw this notice; however, no evidence was introduced by the defendant concerning his alibi. In defendant’s statement to police officers on August 28, 1990, the defendant claimed he was at the Shallow Hole drinking beer at the time Lee Earl Brown was murdered and the house was set on fire. In the defendant’s notice of alibi, he states that on the evening of August 28, 1990, he was on the Calcasieu River with Gary Durbin and Randy Brown. At trial, the defendant never called Randy Brown to testify. Gary Durbin was called as a state’s witness, but he did not give any evidence in support of the defendant’s claim that he and the defendant were on the Calcasieu River at the time of the murder.
Counsel for the defendant has failed to indicate precisely when this objectionable evidence was admitted at trial or argued. After a review of the record, we conclude that the lack of alibi witnesses or evidence was brought up twice during trial: at the end of the state’s case-in-chief, and during the state’s rebuttal closing argument. Defendant did not object to the closing argument reference to his failure to present any alibi evidence and, without an objection, this issue is not reviewable on appeal. La.Code Crim.P. art. 841. State v. Dupre, 408 So.2d 1229 (La.1982).
At the end of the state’s case-in-chief, one of the assistant attorney generals prosecuting the case requested that the trial judge take judicial notice of the defendant’s notice of intent to introduce alibi evidence. Counsel for the defendant objected; yet, the court allowed the exhibit into evidence. At this stage, the state simply asked for judicial notice and it did not argue that the defendant had been untruthful.
At the time the state requested the trial judge take judicial notice of the defendant’s notice of alibi, the defendant had yet to present his case-in-chief. Therefore, the defendant had not had the opportunity to call any of his witnesses. Gary Durbin had already testified for the state, and he said he last saw the defendant at 8:30 p.m. when he left the Browns’ home. Obviously, Gary Durbin was not with the defendant at Shallow Hole. The defendant did not call Randy Brown to the stand. Because no alibi witnesses were called, the tape of defendant’s statement given to the police was the only evidence of an alibi defense.
La.Code Crim.P. art. 727 F provides:
P. Evidence of an intention to rely upon an alibi defense, later withdrawn, or of statements made in connection with such intention, is not admissible in any civil or criminal proceeding against the person who gave notice of the intention.
Although the defendant never “withdrew” his notice of intent to rely upon an alibi defense, the trial court erred in allowing the notice into evidence. Article 727 F prohibits reference to a defendant’s prior asserted in *540 tention to use an alibi defense. State v. Neville, 524 So.2d 1338 (La.App. 1st Cir. 1988), writ denied, 531 So.2d 263 (La.1988). The prosecution may not suggest that the defendant has the burden of proving his innocence or the burden of presenting any evidence.
We find, however, that the trial court’s error in admitting the notice of alibi into evidence at the close of the state’s case-in-chief is harmless error. The defendant’s claim of alibi was already before the court in the taped statement given to the police. Also, counsel for defendant questioned Deputy Grant Willis about his failure to find any empty “Tall Boy” beer cans at Shallow Hole on August 28, 1990. Furthermore, the John-sons, Johnny Buxton, Joe Latigue and the employees at Food Etcetera all testified they saw defendant either at his home, or in the City of Oakdale at times when the defendant claimed he was at Shallow Hole. Therefore, this was not a case in which the alibi defense was abandoned; instead, defendant continued to pursue it although without the witnesses he originally alleged were with him.
We also note that this case was a bench trial and not a trial by jury. The potential for prejudice to the defendant is significantly lessened when the trier of fact is a judge and not a jury. As the comments to Code of Evidence Article 403 note:
(d) The risk of undue prejudice spoken of in this Article may be less substantial when the trier of fact is a judge rather than a jury, and thus sometimes evidence may properly be admitted in a non-jury trial that would be inadmissible in a jury trial....
Accordingly, we find any error by the trial court in allowing into evidence defendant’s notice of intent to rely upon an alibi defense was harmless error.

CONCLUSION

For the foregoing reasons, defendant’s convictions and sentences are affirmed. The district court is directed to inform the defendant of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and file written proof that the defendant received the notice in the record of the proceedings.
AFFIRMED WITH INSTRUCTIONS.